UNITED STATES OF AMERICA
UNITES STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

William P. Youngworth, III, et al			Civil Action No.
Plaintiff						05-30108-MAP

v.

Mark A. Gentile, et al
Defendant

**<u>PLAINTIFF'S RESPONSE
AND MOTION IN OPPOSITION
TO DEFENDANT GENTILE'S ANSWER,
AFFIRMATIVE DEFENSES AND MOTION
TO DISMISS THE PLAINTIFF'S COMPLAINT</u>**

.

DISCUSSION

Defendant Gentile has filed the aforementioned actions before this Honorable Court. Prior to addressing defendant Gentile's affirmative defenses the plaintiffs object to numerous averments filed by this defendant in his answer.

Defendant Gentile has expanded the scope of the plaintiff's allegations within their initial complaint by adding verbiage that simply does not exist. In some cases, this defendant either admits or denies certain facts alleged by the plaintiffs. In other averments this defendant either admits in part or denies in part. In yet other matters, claims to be without knowledge as to the facts alleged. In the remaining answers by this defendant he either admits in part or denies in part and then adds subtle wording that are not before this Court on the plaintiffs' complaint. These additions are designed to completely distort their

original basis. In some cases this defendant adds language which accuses plaintiff W.P.Y., III of outright criminal conduct. This defendant does not reserve these allegations for his affirmative defenses. He attempts to subvert the context and meaning of the facts alleged by the plaintiffs. The plaintiffs would ask this Court to focus upon this defendants answers in his statements numbered 45/ 192/ 296/ 303/ 305/ 307/ 320/ 359/ 361/ 378/ 388/ and 395.

This defendant's answers in the above reference to the plaintiffs' statement of facts co-opts the Fed. R. Civ. Procedures 8 (e) 8 (f) 9 (b) and 10 (c). In some answers, as will be discussed, via addressing this defendant's affirmative defenses, the answers provided are outright perjerous representations designed to deceive this Court by subtle play on words.

Aside from the plaintiffs making this observation for the benefit of this Honorable Court, the plaintiffs are confident that this Court knows its job as a trier of facts and will make its own findings by holding up this defendant's responses against the plaintiff's complaint.

## OPPOSITION TO DEFENDANT GENTILE'S AFFIRMATIVE DEFENSES

#1. First affirmative defense.

Defendant Gentile moves this Court to "strike" the plaintiffs' action pursuant to Rules 5 and 11 of the Fed. R. Civ. P. Thereafter this defendant accuses the plaintiffs of filing a "110 page rambling and frivolous complaint instituted in bad faith with the sole intent of harassing the *defendants* for *their* seeking relief from the courts". (See footnote #1)

The plaintiffs herein oppose this defendant's assertions. The plaintiffs' extensive and detailed complaint sets forth allegations of the conduct by the defendants in chief, Gentile

and Paicopoulos. Thereafter it encompasses their actions in expanding their conspiracy by incorporating yet more defendants. The plaintiffs allege within their complaint, and herein make a condensed offering, that the conduct of the majority of the other defendants, with the exception of defendants Hoyt, the "unidentified safety plan advocate" and James Gentile, were those of various police officials, their employers, elected officials, trial court employees of non judicial scope and appointed agents of this Commonwealth were, at first, duped by defendants at the various stages of this conspiracy (Gentile and Paicopoulos) into restraining the plaintiffs for the benefit of defendants Gentile and Paicopoulos so they could deprive them of their property and violate their rights. Thereafter, the plaintiffs allege that the expanded co-defendants embarked on a remarkable scheme to cover up their actions upon discovering the true facts from the plaintiffs (and supporting witnesses) by simply depriving the plaintiffs of due process and equal protection under the law. If these defendants remained successful in their scheme from blocking the plaintiffs' attempts to prosecute the original defendants while depriving them of any real opportunity of establishing a complete record before a trial court of this Commonwealth. The plaintiffs allege that the defendants calculated that this affair would fade away and the issues, provided to this Court as to one of the Plaintiffs' multiple disabilities (and the other being a minor child), which face the plaintiffs, would simply restrain them by virtue of their extreme gravity. The plaintiffs allege that the tenacity of their pursuit of justice was drastically underestimated by the defendants.

\* Footnote #1.
Defendant Gentile makes certain defenses pursuant to various Fed. R. Civ. P.'s. But yet this defendant feels exempt to follow the same standards in where his pleading fails to follow the most basic of local rules. His responsive answer fails to be formatted in double spaced sentences, proper headings, and margins. Even his certificate of service fails to

make service upon the plaintiffs and instead he states he serves himself "the defendants" with his own service. The plaintiffs would desire to stand on the merits of their complaint and not base their prosecution upon matters that fail to address the heart of their complaint.

The plaintiffs have provided this Court with a detailed background in their "statement of facts". Otherwise, for all this Court would have to guide it is some lack of explanation of how the plaintiffs fell into the fate that they did.

A. Defendant Gentile makes his first substantive objection pursuant to "Rule 5". The plaintiffs have, indeed, reviewed Rule 5 of the *Federal Rules of Civil Procedure* and have failed to find a provision restraining their complaint to "30 pages or less". Certainly the Fed. R. Civ. P. dictate that an action should be as brief and concise as possible. In the case at bar, the plaintiffs proceed to describe a conspiracy two years in methodical planning, numerous encounters with law enforcement entities, courts, numerous appearances and countless appeals for assistance the plaintiffs claim they were rightfully entitled to.

B. Any fact included in the plaintiff's complaint that did not inculpate the defendants within this action was offered as a background into the plaintiff's ordeals of most recent. The plaintiffs bare a burden that prior to their action even being accepted by this Court that they make a requisite showing that they have not filed a frivolous or meritless action. The plaintiffs, in their statement of facts, merely demonstrate that they were not spawn from seeds that popped up in Western Massachusetts.

C. Interestingly, defendant Gentile states that the plaintiffs have filed this action in "bad faith" with the "sole intent of harassing the defendants for *their* seeking relief from the courts". The plaintiffs are certainly enlightened by this admission by defendant Gentile in where *only* defendant Paicopoulos filed a restraining order against the plaintiff W.P.Y.,

III. But now, defendant Gentile incorporates his participation in this restraining order scam, where he lacked *any* standing before *any* court in this matter. This admission speaks volumes as to the veracity of the plaintiffs' complaint.

D.  In the defendant Gentile's First Affirmative defense he claims the plaintiffs are "harassing the defendants" for *their* seeking judicial redress. Beside the above fact that defendant Gentile was not a party before any court in any matter, versus the plaintiffs' allegations that defendant Gentile was the architect of the initial conspiracy. But when the same standard is applied to this defendant that the plaintiffs are seeking judicial redress it then becomes an allegation of "harassment". The plaintiffs claim that this is a noteworthy double standard.

E.  Defendant Gentile states the "facts' section of the complaint makes needless, disparaging and offensive references to the opposing parties". The plaintiffs deny this allegation and claim that they have offered nothing that is not based in pure fact as to defendant Gentile's claims of aspersions made against him. Should defendant Gentile desire to seek this Court's leave to file for an Evidentiary Hearing on this matter, and this Court is so inclined to entertain such, the plaintiffs will prove that not only are these references appropriately applied but that the plaintiffs have shown restraint and are attempting to keep this complaint as brief as possible and when applied to the civil version of Fed R. Crim P. 404(b) standard. Such would show that the facts only scratch the surface as to the character of opposing parties, the plaintiffs have stayed well within the boundaries of the Fed. R. Civ. P. . Additionally, of most recently, the plaintiff's caretakers' home has become a clearinghouse of persons also aggrieved by the conduct of this defendant. These persons are not only willing to testify for the plaintiffs but are eager to

do so. The plaintiff's complaint has actually become a legal crystal ball as to statement of facts #'s 59 and 97. See attached addendum. If the plaintiffs were to disclose the entirety of this defendant's conduct in a home with a minor child present, this complaint would risk offending standards of decency.

Along with the offerings of the above, the plaintiffs at trial will quickly show the relevance of mentions of parties having "no relevance" to the complaint and any legal claim against the parties named in the complaint. Defendant Gentiles' claims are argumentative allegations that the plaintiffs vehemently dispute which are appropriately resolved at trial on this matter.

# 2. Affirmative Defense:

In defendant Gentile's second affirmative defense he attempts to manipulate this Court into believing that this matter is Res Judicata before the Commonwealth's Trial Courts. Thereafter, he requests that the plaintiffs be estopped as result thereof. In support of this defendant's request he states that "the very same issues, parties and property that are the subject of this complaint were adjudicated by the state courts within the Restraining Order filed by co-defendant Paicopoulos" against the plaintiff W.P.Y., III. Defendant Gentile goes on to state that certain defendants and defendant court officers were all present and the issues were *fully adjudicated* by the parties and *extensively reviewed.* Defendant Gentile then requests that this Court take judicial notice of the "other action".

Not only has this defendant again attempted to deceive this Court by yet another play on words, but this assertion by this defendant is an outright lie. The plaintiffs join this defendant in requesting that this Honorable Court take Judicial Notice of this other matter

as well. Of course, the plaintiffs make this request to prove that the representations of this defendant are deceitful and indicative of the conduct that the plaintiffs allege over and over again by this defendant.

The plaintiffs were granted a full Evidentiary Hearing by the Honorable Judge Gardner sitting before the East Brookfield District Court (herein "EBDC") into their motion to vacate the restraining order filed by co-defendant Paicopoulos. This request was granted after a hearing conducted on 4/26/04 by Judge Gardner with plaintiff W.P.Y., III setting his request out before Judge Gardner that the basis of the motion to vacate was based in the fact that this very trial court had been deceived by perjury and fraudulent exhibits of evidence, namely the falsified lease supplied by defendant Hoyt and defendant Gentile for the purposes of deceiving that court in rendering its previous ruling. Judge Gardner also allowed plaintiff W.P.Y., III's writs of Habeas Corpus Ad Testificandum and Ad Duceus Tectum compelling the testimony and production of documents by defendants Hoyt and Gentile. Judge Gardner set this matter upon that Court's Calendar for 5/3/04.

Upon the arrival of 5/3/04, the plaintiff W.P.Y., III, accompanied by co-plaintiff and their caretaker (a witness in this matter) appeared at the EBDC. Also present were defendants Gentile, Hoyt, Paicopoulos and the "Safety Plan Advocate". Upon the matter being called before the Court *only* defendants Paicopoulos and the "Safety Plan Advocate" answered. Upon the plaintiff W.P.Y., III commencing the proceedings at the direction of Judge Abdella he was immediately blocked by his Honor from conducting the full scope of his hearing. Thereafter Judge Abdella severely limited the scope of this hearing and for all intent denied the Evidentiary Hearing with the exception as to issue of "imminent threats". Defendants Hoyt and Gentile were *never* examined and as to defendant Gentiles' claim

that certain documents were *"before the Court"*, since these documents were never produced, seen or examined in *any fashion at all* by anyone. For all intensive purposes this defendant might have shown up with menus from the restaurant.

These matters before this Court are the plaintiff's complaints for violations of their civil rights. Even if there were a shred of truth to defendant Gentile's play on words about what was actually before another court or not, in no way, shape, manner or form were the questions before this Court (the violations of civil rights) ever adjudicated before any Court prior to the filing of this action.

Third Affirmative Defense:

This defendant states that the complaint fails to state a ground for which relief can be granted. Followed by "no contractual agreements existed between the plaintiffs and defendant Gentile". Thereafter he disputes he was a caretaker to the plaintiffs in their *"employ"* and never entered into a business agreement with the plaintiffs regarding D'Errico's Restaurant.

While these are collateral issues to the plaintiff's case in chief, the plaintiffs are not seeking this Courts' redress as to this controversy. Again, the plaintiffs' action is one to redress the violations of their Constitutional Rights. Plaintiffs never claimed they were employing this defendant for any salary at all. The remaining issues disputed by the defendant are disputes of material facts that the plaintiffs intend to prove at an actual trial with actual evidence. As to the defendant's claim that the plaintiffs complaint lacks stating a ground for which relief can be granted the plaintiffs claim that they have, in fact, made a sufficient requisite showing and have presented numerous grounds which set forth violations of their

rights for which the alleged violations can be addressed with remedies for these violations thereof. Thus, stating grounds for which relief can be granted upon trial of the plaintiff's complaint.

This is not a complaint seeking remedies for dispute of a civil business and commerce matter. This is a complaint based out of a pure violation of the plaintiff's rights. The defendant Gentile has failed to respond to the substance of these allegations but makes averments to every subject other than the question before this Court.

Fourth Affirmative Defense:

In the first paragraph of the defendants' Fourth Affirmative Defense he claims that the plaintiffs come before this Court with "unclean hands" and are barred from bringing this action. Then puts forth an allegation that "any and all assets possible (sic) accrued by the plaintiffs are the product of illicit and illegal activities, fraud or direct theft".

Aside from the fact that this defense lacks any basis of factual support, it violates Fed. R. Civ. P. 8.C. as to this averment lacking any offering of proof or even the slightest insinuation as to what this defendant bases his claim on. This claim becomes even more alarming when applied to the co-plaintiff William P. Youngworth, IV, now a 13 year-old minor. This claim becomes even more ridiculous when being applied by this defendant. As a requirement for using this defense the well established rule of Fed. R. Civ. P. 8.C has not been met in the least. As a result thereof this Fourth Affirmative Defense by this defendant must be denied.

Fifth Affirmative Defense:

In this defense the defendant moves for a special order to dismiss the complaint pursuant to Massachusetts General Laws and 42 USC 1988. The defendant makes this motion

absent legal standing whereas he claims this action was filed in retaliation for defendant *Paicopoulos* obtaining a restraining order against the "plaintiff". (See footnote #2) Aside from this defendants' lack of standing as to how this defense applies to himself, aside from the fact he fails to identify *which "plaintiff"*, the plaintiffs must assume that this reference is directed at plaintiff W.P.Y., III. This defendant, of course, neglects to mention one very important fact. That is, of course, that this restraining order was **vacated,** after the defendants in principle, as the plaintiffs allege within their complaint, accomplished the objectives (in main part) of their conspiracy, were allowed by their co-defendants to make a clean get-away with the plaintiffs assets and possessions, finding no further use to have their co-defendants continue to restrain plaintiff W.P.Y., III, and then simply failed to appear before the EBDC to request the Paicopoulos Restraining Order to be extended.

Nevertheless, the plaintiffs certainly appeared before the EBDC on that date. Upon this matter being called before the EBDC's docket the plaintiff W.P.Y., III answered and defendant Paicopoulos defaulted. Whereafter, Judge Abdella, on his own initiative, attempted to allow the restraining order to expire on statute. Plaintiff W.P.Y., III objected and being unopposed, motioned the Court to vacate the order to reflect a proper record as opposed to one disingenuous to the facts. The plaintiffs motion was granted.

But now in the instant pleading before this Court by the defendant he accuses the plaintiffs of making him face some unfair burden of repeated trips to Court to answer these "meritless" claims, necessitating time off from work, having deprived the "defendants" of wages and thus directly harmed the "defendants".

Importantly, beside some broad reference to the plaintiff's complaint lacking any grounds for which relief can be granted, in his averment this defendant has failed to demonstrate where the plaintiffs' complaint lacks merit. Additionally, aside from the conduct of the defendants in this matter, which have left the plaintiffs indigent and homeless, depending on the benevolence of their present caretaker for their very existence, now defendant Gentile feels entitled to ask this Court to dismiss the plaintiffs' complaint because it is inconvenient for him. Of course, he fails to take into consideration the burdens of the same he has already subjected the plaintiffs to. One being 12 years old at the time and being forced to miss weeks of schooling due to the actions of this defendant. The fact that both plaintiff W.P.Y., III and his present caretaker are both severely disabled and were forced to make some half dozen 100 mile journeys to answer defendant Paicopoulos' restraining order which was vacated when she failed to appear, and then defendant Gentile claims standing in that affair.

Lastly, as to this defendants reference that the plaintiffs have identified numerous individuals not named as defendants in this complaint. The plaintiffs incorporated references to them by virtue of the fact that the plaintiffs will call these individuals as witnesses at trial on this complaint.

\* Footnote #2
From the time of the plaintiffs being illegally evicted from their home, and now the defendants have taken possession of such, plaintiff W.P.Y., III has undergone four surgical nerve blocking operations to his trigeminal nerve system, underwent shoulder surgery, spent over one year in physical therapy, suffered decay of his vision due to optic nerve damage and dipolpia, under treatment for sleep apnea which causes him to stop breathing as many times as 160 times per hour, awaiting vascular surgery scheduling at this very present for both his legs, has had his Morphine medications increased by 100% and can barely walk.

The plaintiff W.P.Y., III feels these are noteworthy issues in where he is forced to

prosecute this action Pro Se. Merely reading pleadings and typing must be done by others. Thus far the plaintiffs cope with these extreme burdens. But to be accused of filing this action to merely harass a particular defendant is not a luxury these plaintiffs could entertain even if they so desired. These plaintiffs appeal to this court after having been systematically denied their rights by officials of this Commonwealth. It is also noteworthy that now defendants Gentile and Paicopoulos have married and will doubtlessly invoked marital privilege at trial on this matter. The plaintiffs request no actions that diminish any defendants' rights but ask this Court to take certain disadvantages into consideration. Simply getting to a Law Library to do legal research creates an extraordinary burden in where the plaintiff W. P. Y., III can no longer read the normal text of a law book. Upon the plaintiffs having to memorandise an argument of controlling case laws the burden will be extreme. Additionally, the plaintiffs have already endured several hundred dollars in copying costs, stationary, ink cartridges, postage and related materials needed to prepare this action. The plaintiffs now only exist on a meager income and have no extra monies for filing anything but a truly substantive action.

**WHEREFORE:** The plaintiffs pray this Honorable Court:

1. Deny defendant Gentile's motion to dismiss the plaintiffs' complaint.
2. Allow the plaintiffs leave as to any Fed. R. Civ. P. as to length of their complaint only, (If they unintentionally, in fact, violated any provisions not found within the text of a plain reading of the Fed. R. Civ. P. which they have downloaded from a US Courts website and rely upon) by virtue of the fact that this is a 15 party complaint with extraordinary complex conduct alleged by the plaintiffs against the defendants. Or in the alternative allow the plaintiffs to re-file with respect to this defendant without prejudice to the plaintiffs.
3. Take judicial notice of the deceptive and misleading dictum of this defendant's answers and defenses.
4. Deny defendant's requested relief's, attorney costs and Court costs.
5. Set this matter upon this Court's Calendar for pre-trial proceedings.
6. Grant the plaintiffs a jury trial as to the instant complaint.

Respectfully submitted,

William P. Youngworth, III. Pro Se
Plaintiff, by and through for co-plaintiff,
William P. Youngworth, IV
P.O. Box 2663
Springfield, Mass. 01101
413-736-5727

**ADDENDUM**

# WORCESTER MAGAZINE

MAY 26, –JUN 1, 2005 • VOLUME 30, NUMBER 36| WORCESTER COUNTY'S INDEPENDENT VOICE



Local Weather
**59 F**
forecast...
Powered by AccuWeather



**CURREN ISSU E»**
- HOME
- A & E
- Calendar
- Dining
- Editorial/Letters
- News
- One on One
- Personals
- Wicked Mint Weekend
- Worcesteria
- 1001 Words

**WOMAG INFO»**
- About Us
- Advertise
- Contact Us
- Get Your Copy
- Browse Archives



Looking for Love?
Worcester PERSONALS

## CITY DESK

### FEATURES

**Food fight | Invasion on Newton Hill | One window per customer**

# Food fight

*The family behind a Shrewsbury Street legend goes to court*

By Noah Schaffer

In a neighborhood packed with family-run institutions, D'Errico's, the restaurant attached to the long-established market on Shrewsbury Street, stands out as one of the most venerable.

Unfortunately, the restaurant has been shuttered in recent weeks. A recent lawsuit indicates the family that owns the establishment is in dispute over the direction of the business. Although D'Errico's restaurant is slated to re-open in a few weeks, the bad blood between the children of its recently deceased matriarch continues.

The lawsuit was filed by the three sisters who are minority owners. Their brother, Joseph Evangelista, is the majority owner. Marguerite Shultz, Anne Holland and Lucia Engdahl are all the daughters of Angie D'Errico Evangelista who, until her death last June at age 83, was often seen working at the market.

The lawsuit centers around Evangelista's hiring of a man named Mark Gentile as manager of the restaurant. By all accounts, there were a number of vehement arguments between Gentile and the sisters. In January, Gentile wrote the sisters a letter

THE RESULTS ARE IN! Click on the



The Jazz Worcester Real Book

click here for information & to order



forbidding them to enter the restaurant they partially own because of "your recent behavior (loud public disturbances) and intrusions into non-public areas of the restaurant."

The lawsuit filed by the sisters, which names Joseph Evangelista as an interested party, called Gentile a "convicted murderer" and said he was prone to "violent outbursts ... threatening people with knives and broken dishes." It said that after one of the sisters pointed out a mistake in a catering order and argued with Gentile, they feared for their lives.

The lawsuit asked for an order barring Gentile from contacting the sisters and requested that a Worcester Superior Court Judge remove him from his position as manager.

A response filed by Attorney Sean Carnathan on behalf of Gentile denies all of the charges. "There is nothing to support the claims," he writes, "Gentile works 80 hours a week ... and is not a convicted murderer." The claim says that the sisters "have been disrupting the operation by instigating arguments in front of patrons."

He adds that a court could not order Gentile to be fired because the sisters "have no direct [control] of the operation."

The response also says that the Trust of Angie Evangelista would be redistributing the stock she owned in the business, to be shared equally among her four children. Documents in Worcester Probate Court show that Joseph Evangelista recently requested that his mother's will be probated, setting the stage for another battle over control of the business.

Justice Timothy Hillman denied the sisters' request to remove Gentile, but did impose a restraining order against him. "The defendant Mark A Gentile is prohibited from assaulting, threatening, harassing or intimidating the plaintiffs. [Gentile] is prohibited from causing damage to the property of the plaintiffs. The defendant is prohibited from speaking to or telephoning or contacting the plaintiffs. In all other respects the request for injunctive relief is denied," he wrote.

Gentile had been charged in 2000 with assault and battery with a dangerous weapon (a knife) and resisting arrest following a violent incident in Spencer. A jury found him not guilty of assault and battery, but guilty of resisting arrest. He was sentenced to serve two and a half years in the House of Correction, with 15 months to be served, the balance suspended, and three years probation. It was a return to jail for Gentile, who spent years incarcerated in Walpole in connection with a shooting in which the victim reportedly survived. (In 1990, a warm profile by *Worcester Telegram & Gazette* columnist James Dempsey depicted Gentile as "unusually bright" with a "passion for literature" as well "a man with a quick temper and a gun." It also documented how he and a friend escaped and went on an armed robbery spree.)

Gentile was arrested again this winter in Vernon, Conn., for possession of burglar tools, criminal mischief, intent to commit

theft and interfering with and resisting arrest. That arrest made him in violation of his probation and he was required to post bail. A hearing has been scheduled for June 7.

While in jail, Gentile became a party to a controversy surrounding the famous 1990 theft of paintings at the Isabella Stewart Gardner Museum in Boston. A former cellmate, William Youngworth III, appeared on an ABC newsmagazine show. After the broadcast, Gentile told *The Boston Herald* that he had painted a forged Rembrandt self-portrait that had been shown on the program. Gentile claimed that Youngworth paraded around with the forgery to convince people he could gain access to the actual pieces of stolen Gardner Museum art.

In an interview this week, Evangelista said D'Errico's restaurant will re-open in "two to three weeks," but without Gentile. "We had a lot of complications and everyone needed a break," he says, adding that the construction of a medical building at the top of the hill above the restaurant also factored in.

"It's going to be much better when we re-open, with a simpler menu and the return of a chef we had about six years ago," he added, promising that the Italian-American cuisine and reasonable prices would remain. "It will be a lot better and easier for me."

Evangelista also noted that it was in the interest of the market to re-open the restaurant. "Business brings business," he says. "When the restaurant is open, it helps the market."

Although Gentile won't be part of the new operation, "there are no bad feelings," says Evangelista. "He's still available. Mark wants to move on to other things. We're like brothers, me and him."

This isn't the first time the extended Evangelista family has gone to court over one of their eateries. In the mid-'80s, the sons of the patriarchs of the Parkway Diner were involved in a lawsuit over how much should be paid for a share in the company. A judge ordered the higher amount to be paid to a son who had inherited one of the shares.

# Invasion on Newton Hill

*It's the attack of the four-wheel ATVs*

By Brian Goslow

Having spent the past few years working to clean up Newton Hill — "The 41 acres of Elm Park the city doesn't maintain" — Rick Miller was fearing the worst when he heard that some youths had invaded the park on a four-wheel all-terrain vehicle (ATV) on May 24.

## CERTIFICATE OF SERVICE

Comes now the plaintiff, William P. Youngworth, III, Pro Se who serves the foregoing Plaintiff's response and motion in opposition to Defendant Gentile's answer, affirmative defenses and motion to dismiss the plaintiff's complaint by serving same upon this Courts Clerk at his usual place of business and attaching same service for service upon defendant Mark A. Gentile at the address he has provided to this Court as his address of record by causing same to be served via US First Class mail. The same pleadings are also served upon this parties in the same fashion for co-plaintiff William P. Youngworth, IV by and through plaintiff William P. Youngworth, III.

William P. Youngworth, III. Pro Se
Plaintiff
P.O. Box 2663
Springfield, Mass. 01101
413-736-5727

Dated: 6/20/05