Office of Attorney General Thomas Reilly
Victim's Compensation & Assistance Division
One Ashburton Place
Boston, Ma. 02108

August 14, 2005

RE: Application filed on 5/5/05/ supplemental information

Dear Attorney General:

   On 5/5/05 I filed for victim's of crime compensation from the fund maintained for which that is under your control.

   To date I have not received any acknowledgement to the receipt of the applications filed for my son and myself. I also asked for the appointment of special counsel since a conflict exists between us in my naming you as a defendant in United States District Court action 05-301080-MAP Youngworth, et v. Gentile, et al.

   As well, to date I have received no response from you as to this request.

   Enclosed is a cover letter I sent along with my son's and my own applications for compensation from the fund you maintain for victims of crime in the Commonwealth. For some reason the second page containing the closing of the letter was not saved on the computer's files. No doubt a mistake attributed to my visual impairments.

   I also enclose additional documentation to my Ophthalmologist, the Mass. Commission for the Blind, and a mandatory reporting of legal blindness filed on my behalf with the Commission.

   As has come to my attention of most recent that there is now a witness with first hand knowledge that my caretakers, whose conduct in abusing my son and myself is the genesis for this affair, not only solicited persons to murder me, hatched several other conspiracies to murder me, but, in fact, made an actual attempt on my life by poisoning me.

   This fact is averred to with my Complaint when I recount in the facts common to all counts concerning my collapsing in my home on January of 2005. So now with a compelling offering of proof that an attempt on my life was made I have asked medical professionals to revaluate if my loss of vision was exacerbated by the fact that I was poisoned after sustaining damage to my optic nerve networks in a 2002 car accident.

   In my lay opinion it would answer many of the questions concerning the dramatic loss of vision I have suffered. However, for the purposes of the instant matter of compensation for victims of crime, I would like this added to my application. Additionally, considering I filed these applications with your office over three months ago, I would like some

acknowledgement that our applications have, in fact, been received and assigned some case number. I would also like an answer to the issue of the conflict of interest that lays within this matter and as to my request for the appointment of special counsel to deal with our claim for compensation for the fund.

Or, if you so deem it appropriate, I can amend our Complaint pursuant to Fed. R. Civ. P. 15 (b) and place the question of your inaction in yet another matter connected to the need to file the federal action with our alleging, yet again, that my son and myself have been deliberately treated as a disfavored minority and the actions are so designed to further deprive us of our rights in a discriminatory fashion.

For the moment I can not lay my hands on our copies of the actual completed applications for compensation under the fund you maintain. This affair has produced pounds of documents and due to my eyesight my filing system leaves much to de desired. However, I think by now you can take me at my word that I did indeed file the proper forms with the compensation applications for my son and myself.

I have assured the investigating troopers that I will not involve the media in an active investigation. However, if it becomes appropriate for accountability that position will change. This new caveat of this affair has reached the attention of certain members of the media but no reporting will be done with trooper detectives attempting to conduct an investigation and a prosecution especially with the safety of witnesses in the balance.

I believe that three months lacking a response to the filing of our applications with your office is indicative of the overall climate in this affair. I believe that such, in and of itself, is a newsworthy item standing on its own. Perhaps you don't agree. Should your posture remain the same as throughout the conduct I allege on your behalf within the Complaint before the Court the question will beg an answer as to why my son and myself are being deprived services any other similarly situated citizen of this State would receive.

Very truly yours,

William P. Youngworth, III
for W.P. Youngworth, IV
P.O. Box 2663
Springfield, Ma. 01101
413-736-5727

cc: Atty Salvatore Giolandino
 : Clerk of United States District Court
 : File

Office of the Attorney General,
Victim Compensation & Assistance Division
One Ashburton Place, 19th Floor, Boston, Ma. 02108-1698

May 3, 2005

Re: request for benefits as victim of crime.

Dear Attorney General:

Enclosed are completed applications for compensation under the Commonwealth's Victim Compensation and Assistance program.

Since the enclosed applications do not allow me to submit the entire body of information supporting my child's and my claim, this addendum letter is necessary to submit in addition to your agency's standardized forms.

Prior to addressing the gist of this matter I would like to address a potential problem herein.

I have made numerous requests for help from you. To date my desperate pleas for assistance have been deliberately ignored in an indifferent fashion. The only exception to this lack of response was when an employee assigned as an Investigator to your Worcester Office, and is related to the felon in chief who (with others) committed the criminal offenses against my child and myself, responded to me denying our request that your office intercede on our behalf. This is now the subject of a State Ethics Commission investigation.

Additionally, and most regrettably, I was forced to file an action to redress the violation of our rights before the United States District Court. After review by a Federal Clerk Magistrate our action was taken up by the Federal Court in Springfield and assigned Docket Number 05-30108-MAP. In a few moments my caretaker will be driving me to the local U.S. Marshals Office so they can make service upon you and the other defendants in this matter. Nevertheless, we are entitled to benefits being offered through your program for the victims of crimes. We are in desperate need of the assistance of this program. But, as you are doubtlessly aware, we now have a conflict of interest issue in this matter. My suggestion is to place this matter in the hands of independent uninterested third parties hands.

Until my suggestion can be considered, or if you decide that you can fairly act on our claim and process it, I would request that this letter be attached to our applications for Victim Compensation. I ask this since the application does not allow me the space or any place therein to properly set forth the facts of our claim (which will now be addressed once you receive your complaint from the Marshal Service)

James S. Rosenthal, M.D., P.C.
780 Chestnut Street
Springfield, Ma. 01107

August 14, 2005

RE: Supplemental information/ Poisoning.

Dear Dr. Rosenthal:

   Adding another dimension to the possible contribution of my episodic vision failure, I have been informed by the Massachusetts State Police that I survived an attempt on my life and that my former caretakers, whose abuse of my child and myself I have mentioned to you, had poisoned me.

   The State Police have developed a witness who is actually a sibling of one of my former caretakers that has informed them that my former caretakers were administering some form of poison by contaminating my medication and my food.

   I had received very specific information that my caretakers had tampered with my medication. I knew that they had replaced a medication named Colonopin with a very powerful and equal number of pills in this bottle with a drug called Methadone. My information was that these individuals were attempting to cause a lethal overdose of narcotic drugs in my system my mixing this potentially lethal substitute with my prescription Morphine that Dr. Slack prescribes to me for my trigeminal in infra orbital nerve damages.

   I am due to meet with State Police Investigators this coming Tuesday (8/16/05) at my caretaker's home. I only received one of the Investigators names. It is Trooper Michael J. Lyver based out of the Auburn Barracks. I do not know what substances I was poisoned with. It is a fact that I collapsed in my home back in January of 2004. This incident was, in fact, reported to Dr. Slack and he had me undergo testing at the Cooley Dickenson Hospital.

   Most certainly my life was saved when my present caretaker came to my home that day and brought me to her home. At the time we assumed this collapse had something to do with the neurological difficulties I was experiencing.

   I am aware that poisoning can have effect on victim's eyesight. What I am germane to is if this act exacerbated my visual impairments and if it might be contributing factor for the episodes of my vision loss and the duration of such during these events.

   In any event, I felt that this shocking revelation should be brought to your immediate attention. This might answer some questions with a greater insight of the totality of the problems I am experiencing with my eyesight. Last week I took a nasty fall when my

vision failed while attempting to step off a store escalator.

    Would you please have your office contact me so you can re-examine me to determine if any of my present problems goes beyond your past diagnosis's and encompasses a situation where I suffered additional damage to my eyesight from being subjected to a toxic substance of unknown composition for a prolonged period of time.

    Thank you yet again for your attention. I apologize for bringing such complicated issues into your practice. Frankly, I am not surprised by this new information. This new information goes on to describe several other plots to employ different persons to murder me. When I survived by unwittingly stumbling through the fatal plans my caretakers had in store for me they resorted to some despicable scam in duping some backwoods Court using a forged lease.

    By the time the Court and the police were informed that they had just held us down so our caretakers could rob us, a remarkable cover up scheme was employed, instead of just setting things right they worried about everyone else's interests other than my child's and my own.

    Yours truly,

*W.P.Y III*

William P. Youngworth, III
P.O. Box 2663
Springfield, Ma. 01101
413-736-5727
Yworth3@msn.com
cc: File
dmm/wpy3

Commission for the Blind
48 Boylston Street
Boston, Ma. 02116-4718

August 14, 2005

RE: Supplement to James S. Rosenthal, M.D., P.C.,'s Mandatory reporting of legal blindness of 7/22/05.

Dear Sir or Madame:

   Kindly add the enclosed letter to Dr. Rosenthal's Mandatory reporting of legal blindness.

   Additionally, I would like to voice my concerns in asking the Commission to base a determination not purely based on my need for rehabilitative services, but the fact that for whatever reason my vision fails, when it does, I am left with *no vision at all*.

   I have an intake appointment with the Mass. Rehabilitation Commission. I need complete vocational retraining services. I am a widower with a 14 year-old boy who is being deprived of the enrichments a child his age deserves. He won't leave my side for fear that something will happen to all he has left in the world after the untimely death of his mother.

   While my situation does not encompass the classic scenarios of what is commonly accepted as 'legal blindness' I certainly fit a most severe criteria. I lose my vision several times per day for durations ranging from five to twenty minutes. I gave up my right to operate a motor vehicle and resigned myself to the fact that I will never again be able to make a living in the only vocation I know as an arts & antiques dealer. A large part of my income came from appraisal work. This particular vocation does not allow for mistakes and being known as visually impaired would nullify any expert opinion I rendered in cases of insurance matters and probate situations.

   The difference between "low vision" and "legally blind" can not even be compared. The Social Security Administration found me disabled without ever looking into my visual impairments. I had been misinformed over a year ago by my intake case worker at Social Security. Since then I have been pursuing a fruitless approach when I discovered that Social Security *only* places a visually impaired individual in the benefit scale they deserve to be in when they possess a certification of legal blindness.

   This seems to be the case with every other agency that would help a person like me rebuild his life. Prior to being abused by my caretakers I was financially self sufficient. I only needed my survivor benefits. My son and I were left homeless and indigent after our caretakers robbed us. This issue is before the United States District Court's Western Division on its Docket 05-30108-MAP. Now, with a suit pending for the violation of our

civil rights and the deliberate indifference thereof, the Massachusetts State Police are now investigating after one of my former caretakers siblings informed them that I was poisoned by them and survived this attempt on my life attributing the symptoms of the poisoning to the many other issues I suffer from.

I know the Commission has latitude to certify individuals as legally blind on a case by case basis. This certification would be my ticket to finding a new vocation that I can once again be a productive citizen and regain my independence. With my child's secondary education expenses less than five years away I desperately need all the help I can get as fast as I can humanly receive it.

Thanking you for your time and consideration, I am.

Very truly yours,

X W. P-Y. III

William P. Youngworth, III
P.O. Box 2663
Springfield, Ma. 01101
413-736-5727
cc: File



**Commission for the Blind**
48 Boylston Street, Boston, MA 02116-4718
(617)727-5550
1-800-392-6450
FAX (617)350-7959

## MANDATORY REPORT OF LEGAL BLINDNESS

The Massachusetts Commission for the Blind is required by law to maintain a register of the blind in the Commonwealth. Under Chapter 6 - Sec. 136 of the General Laws, institutions, physicians, oculists, and optometrists are required to report within 30 days all cases of legal blindness.

1. All cases where vision with correction is 20/200 or less in the better eye.
2. All cases regardless of visual acuity if the visual field is reduced to a radius of 10° or less with a 6mm. white test object.

**PATIENT INFORMATION**

Name: William _____ Youngworth _____   Sex: M   Social Security Number: 024-50-553_

Address: P.O. Box 2663, Springfield, MA  01101   Telephone No.: 413-736-____

Date of Birth: 8-10-59   Age at Onset RE: ___ LE: ___ Race: ___ Marital Status: ___

Parent/Guardian (if applicable): Name _____ Telephone No. _____

Address (if different than patient): _____

**VISUAL ACUITY WITH BEST CORRECTION** Use Snellen notations in recording vision (20/200, 5/200, etc.)

R.E. 20/40 Distant vision with best correction
L.E. 20/20 Distant vision with best correction

*FIELD OF VISION  If restriction is indicated, record test results on reverse side of form.

**CAUSE OF BLINDNESS**  If injury, disease or poisoning indicate specific type.

Diagnosis
R.E. Gunshot injury 1977 and MVA 2003 left patient
L.E. with orbital entrapment OD and diplopia. Also

Etiology
R.E. h/o optic nerve contusion OD
L.E. _____

Is there a secondary disability? If so, specify. _____   Diabetes? Yes  (No)

Is low vision aid evaluation recommended? _____

PROGNOSIS: unlikely to improve.

RECOMMENDATIONS/REMARKS: see attached letter

Date of examination: 6-3-2004 and 7-7-2005

Date of Report: 7-21-05

Signature and Discipline of Examiner: _____ MD, ophthalmologist
Please Print Name of Examiner: James S. Rosenthal MD
Number & Street: 780 Chestnut Street
Springfield, MASS 01107   413-794-7900

*PLEASE TURN OVER FOR FIELD CHARTS