FILED
'S OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS** 2005 AUG 15  A 10: 07

U.S.

| | |
|---|---|
| WILLIAM P. YOUNGWORTH, III, et al, ) | CIVIL ACTION 05-30108-MAP |
| PLAINTIFF, PRO SE                 ) | |
|                                   ) | |
| v                                 ) | |
|                                   ) | |
| MARK A. GENTILE,  et al,          ) | |
| DEFENDANT                         ) | |
| _____  ) | |

**PLAINTIFFS OPPOSITION TO MEMORANDUM OF**
**JENNIFER McGINNIS (WHOSE TRUE NAME IS JENNE McGINNIS)**
**IN SUPPORT OF HER OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**
**COMPLAINT**

1. **BACKGROUND:** Defendant McGinnis, who council now identifies as "Jenne"

McGinnis files his opposition to the plaintiffs' motion to amend Complaint.

Prior to addressing the substance of what council for the defendant calls a "statement of

facts", the plaintiffs now discover that this defendant is now not "Jenna" McGinnis as

council previously identified, but now council identifies this defendant as "Jenne".

The plaintiffs are completely and utterly exhausted by their attempts to date to literally

legally wring a true name out of this defendant.

At this point, the plaintiffs can only hope that the defendants' own council has made a

mistake and did not mislead the plaintiffs by informing them that his client's name was

"Jenna" McGinnis as opposed to "Jenne" McGinnis.

Council for the defendant begins his attack on the plaintiffs amended Complaint by

identifying it as a "stream of consciousness accounts of the plaintiffs personal, criminal and

family lives". All issues interwoven within the facts of this Complaint by its very nature.

-2-

However, plaintiff W.P.Y., IV takes exception to any reference by slight of legalese that his life has been enveloped by a "criminal life". The only thing remotely connected to the phraseology of the term "criminal" is the criminal acts that have been committed against his person. As for the remainder of Council's 'facts' the plaintiffs can only describe such as making a sow's ear into a silk hat.

   The fact remains, that the Complaint the plaintiffs have filed before this Court describes an intricate conspiracy laced with countless overt acts ,some two years in planning and when it all comes to a crescendo, it envelopes 13 defendants the plaintiffs *could* seek this action against and at least three additional judicially immune uncharged co-conspirators that the plaintiffs *could not* charge within their Complaint due to their enjoyment of well established iron clad protections afforded them by virtue of absolute immunity doctrines.

   As to the construction of the actual Complaint, the plaintiffs again state that they did their absolute best, in good faith, to file the briefest and most concise action they possibly could while attempting to encompass its entirety. The lengthy detail contained within the Complaint was so designed to do substantial justice and to give this Court, along with the defendants ,a complete overview of the exact nature of this cause of action. The plaintiffs claim the matter before this Court is as chilling to any standards of the barest rights any other citizen of this Country would enjoy who would come before this Court. The plaintiffs seek to redress the violations of their Constitutional protections that they so allege herein.

   Council for the defendant would have this Court place the genesis of this action on 2/24/04 when "said co-defendants obtained a Restraining Order against plaintiff W.P.Y.,

-3-

III." However, as stated in the plaintiffs actual Complaint, it is clearly indicated that the said co-defendants obtained this restraining order on 2/23/04. This is a crucial lynchpin within the Complaint that council attempts to obviate.

The plaintiffs allege that the defendants, the architects of this conspiracy, chose the date they, in fact, obtained this restraining order with absolute precision and as a last resort. As stated within the Complaint, the two co-defendants in chief, Gentile and Paicopoulos, had attempted to murder plaintiff W.P.Y., III. Conspired to employ other devious attempts on his life, attempted to remove co-plaintiff W.P.Y., IV from his home, removing him from the jurisdiction of the Commonwealth and then murder plaintiff W.P.Y., III in a staged home invasion.

However, their plans were partially foiled on 2/24/04 when plaintiff W.P.Y., III stumbled into their scam which they had not fully completed. The defendants, as did the plaintiffs, were certain that plaintiff W.P.Y., III was being admitted to the Massachusetts General Hospital on that date. With plaintiff W.P.Y., III in a hospital bed and plaintiff W.P.Y., IV locked out of his home upon his return from school having no place to go, the defendants figured on having a more relaxed time line to methodically sift through the records of the plaintiffs and destroy *all* the evidence as opposed to their only having enough time to destroy the records that they did.

The defendants Gentile and Paicopoulos knew plaintiff W.P.Y., III was taking legal action against them while he was in Boston obtaining medical treatment. Plaintiffs then Attorney, Marvin H. Siegel's office was a mere two blocks from the Mass General Hospital. The defendants had been forewarned of the pending intention to halt their abuses

-4-

of the plaintiffs. Their employing the restraining order scam was their court of last resort.

But in the defendants haste they overlooked a cache of records which now haunt them.

On 2/26/04, defendant McGinnis was fully informed that she was assisting two

notorious felons in robbing the plaintiffs of all their worldly possessions, their

independence, a school of the plaintiffs choosing and their home.

Defendant McGinnis knew her now co-defendants were manipulating a Court into being

the very instrument to restrain the plaintiffs so they could be deprived of their rights. Not

only did this defendant know it she furthered the conspiracy to violate the plaintiffs rights,

as opposed to remaining within the margins of what she is employed to do, she knowingly

assisted her co-defendants hone their scam to its sharpest edge.

Council for the defendant attempts to paint a landscape for this Court which is

completely contrary to the facts of this Complaint. Upon the commencement of the

2/26/04 emergency hearing plaintiff W.P.Y., III was making an effective showing that

even if the conduct alleged within defendant Paicopoulos application was true it did not

rise to any level of any danger to Paicopoulos. It was upon the making this very point did

defendant McGinnis instruct her co-defendant to inform the Court that plaintiff W.P.Y.,

III had "assaulted her", knowing this be an act of perjury with her knowing full well that

no such act ever happened and this modification to Paicopolous' testimony was needed or

she would have failed to present any immanent threats to her safety. The presiding Justice

admonished Paicopoulos if she remembered what she had stated under oath on 2/23/04.

Council for the defendant calls these observations by the plaintiffs (and witnesses not

party to this action) "speculative and conjecture". The plaintiffs offer pure logic in

-5-

rebuttal. While plaintiff W.P.Y., III was addressing the Court on 2/26/04 the effects of his challenges were obvious. Defendant Paicopoulos was being continuously coached by defendant McGinnis. Council's theories when "distilled" properly describe a legal scenario of extraordinarily strong circumstantial evidence and a state of mind, both admissible under the Fed. R. Civ. P. and the Fed. R. Evidence. Of course, this only applies to this particular hearing. In later hearings, as council for the defendant conveniently neglects to state, the plaintiffs allege in their facts common to all counts, that the instructions defendant McGinnis was giving her co-defendant was audible to witnesses in their proximity. The plaintiffs intend to introduce one of these witnesses at trial on this matter, an individual who herself is an officer of the Court.

   Thus, the plaintiffs state, disproving council for the defendants' theory that the allegations against his client are purely the product of speculation or "groundless conjecture". Additionally, in other instances, council for the defendant continues to distort the facts of this Complaint by simply replacing language within the plaintiff's Complaint for phraseology of a less inclupatory definition. For instance, council states "on July 26, 2004 the Restraining Order expired by statute or an extension was waived by said co-defendant." Council is outright attempting to deceive this Court.

   This restraining order neither "expired" or "waived". It was **VACATED** after the defendants in chief had no further use for the assistance of their co-defendants in restraining the plaintiffs, (since they had accomplished their objectives of their scheme and made a clean get away with the crimes they committed against the plaintiffs) they simply failed to appear. Not only did defendants Gentile and Paicopoulos fail to appear so did

-6-

defendant McGinnis demonstrating by her lack of appearing that she knew her co-defendants were not appearing and therefore did not appear herself.

This defendant played an intricate hands on role in this action before this Court. This defendant advised her co-defendants not to accept legal processes served upon them by the plaintiffs thus obstructing justice. This defendant had full knowledge that her actions were contrary to law and she was violating the rights of the plaintiffs.

Council next argues that the plaintiffs' action should be tossed out due to the fact (other than those already addressed herein) that the communications between herself and certain co-defendants were "privileged" and subject to laws protecting same. The plaintiffs argue that it is a well settled doctrine of law that privilege ends were criminal conduct starts.

The plaintiffs allege that the defendants' conduct was knowing and criminal. The defendants further allege that this defendants conduct after being served with this Complaint rises to the level of conciseness of guilt by her attempts to evade submitting herself to the jurisdiction of this Court.

The plaintiffs allege the communications and relationship of which the umbrella of legal protection, that council for this defendant attempts to invoke, fails when a defendants' conduct is contrary to law and invalid when only seeking to avoid the consequences of legally volatile conduct.

II. In council's second argument he seeks to bar the plaintiffs' amendment to reflect the actual name of defendant McGinnis.

This argument is based on council's assertion that the plaintiffs have failed to demonstrate the elements of an action pursuant to 42 U.S.C. section 1983 and any further

-7-

prosecution of this Complaint would be futile. Council then attempts to convince this Court that his client is only mentioned in limited quantity within the actual Complaint and thus lacking in behavior that rises to the level to support a cause of action against defendant McGinnis.

Aside from council's attempt to try this matter within the pleadings pre-trial the plaintiffs heatedly dispute council assertions of the inclupabilty of defendant McGinnis. The plaintiffs so allege within their Complaint that this defendant knew the actions she, in fact, took were perjures and designed to knowing deprive the plaintiffs of their home which they were illegally evicted from when the defendants illegally changed the locks on their home and not merely "forced to vacate" their home as council for the defendant again distorts the facts within the plaintiffs Complaint.

The plaintiffs allege that if this defendants' willful participation in a heinous conspiracy to knowing conspire to deprive the plaintiffs of their home, papers, assets, possessions, a school to attend and essentially their entire world, while knowing that one plaintiff was a seriously ill man awaiting imminent surgery and the other was then a 12 year old child, all while acting under the color of law,  if it is not an occasion rising to the level of an action ripe for prosecution of a civil rights violation, than nothing is.

The plaintiffs do apologize for not submitting case precedents in support of their legal position. The plaintiffs have previously explained to this Court that their law library has no facilities for the visually impaired, the plaintiff W.P.Y., III is awaiting vascular surgery to restore his ability to walk and simply can not get to a law library.

However, the plaintiffs state that the fundamentals of law they rely on are commonly

-8-

recognized axioms of law and settled beyond legal question. All that remains is the plaintiffs proving that the violations they allege of the knowing constitutionally volatile conduct of defendant McGinnis satisfy a question a guilt to a jury.

The plaintiffs allege that defendant McGinnis is a connected insider in the East Brookfield District Court. That she participated as a key principle player in a violation of the plaintiffs rights while acting under the color of law. Defendant McGinnis is supposed to be an advocate for persons seeking protection from domestic abuse. Instead she acted as the judicial instructor on how to violate the plaintiffs rights while using the Commonwealth's laws of domestic protections as a club to beat the rights out of the plaintiffs.

Lastly, the plaintiffs state that they have attempted to construct a Complaint to redress the violations of their most basic rights. They have been forced to do so not by choice but by the very actions of the defendants who deprived them of assets which would allow them to retain council. To attempt to capitalize on the disadvantage the defendants have placed the plaintiffs in is lacking in both justice and equity. The plaintiffs have stayed true to Fed R. Civ. P. 8 (f) and all their pleadings have been so constructed to do substantial justice. The plaintiffs have not initiated this action for their leisure. The costs associated with litigating this Complaint has forced the plaintiffs to make hard choices over their basic needs. The plaintiffs have done such because they feel that they have brought a meritorious action and will prevail at trial upon their Complaint.

As stated in the above the plaintiffs claim that council for the defendant in the instant pleading has understated and minimized crucial issues surrounding the Complaint before

-9-

this Court. In other instances council has completely distorted subjects which are facts and

not merely allegations. This defendant is a principle on the first tier of this Complaint. This

defendant has not conducted herself in accordance with her employment description. The

defendant's conduct amounts to nothing less than using her expertise as a judicial

advocate for nefarious purposes. The defendants' conduct has irreparably violated the

rights of the plaintiffs in the most basic and appalling ways.

**WHEREFORE:** The defendant McGinnis' motion to strike/dismiss the plaintiffs

Complaint should be denied and this matter should be calendared for further pre-trial

proceedings.


Respectfully submitted,

William P. Youngworth, III
Plaintiff, Pro Se
by and for Plaintiff William P. Youngworth, IV
P.O. Box 2663
Springfield, Ma. 01101
413-736-5727
yworth3@msn.com

## CERTIFICATE OF SERVICE

Now comes the plaintiffs who cause the foregoing attached motion to be served upon this Court's Clerk by serving same via Lobby service and thereafter serve same upon council for defendant McGinnis by causing same to be served via first class U.S. mail at his usual place of business.

8/15/05

William P. Youngworth, III
Plaintiff, Pro Se
P.O. Box 2663
Springfield, Ma. 01101
413-736-5727