UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILLIAM P. YOUNGWORTH, III: and ) CIVIL ACTION 05-30108-MAP
WILLIAM P. YOUNGWORTH, IV, )
PLAINTIFFS )
)
v. )
)
MARK A. GENTILE, et als, )
DEFENDANTS )

**PLAINTIFF'S OBJECTION TO MAGISTRATE'S
RECOMMENDATION WITH REGARD TO DEFENDANT'S
MOTION TO DISMISS (Documents Nos. 11,12, and 39
OF FEBRUARY 3, 2006**

The plaintiffs, by and through plaintiff William P. Youngworth, III, asserting standing to advocate on behalf of his minor child and co-plaintiff, William P. Youngworth, IV, hereby files their objection to this Honorable Court's Magistrate Neiman's recommendation to this Court as entitled in the above.

Prior to addressing the legal merits of the Honorable Magistrate Neiman's recommendation to this Court the plaintiffs call to this Court's attention that, unknown to the plaintiffs prior to filing their action before this Court, they would be doing so within a fluid situation. While motions filed by all parties in this action were awaiting this Court's attention on their place within this Court's massive case load, dramatic developments integral to the plaintiffs' burden of proof had come to the plaintiff's attention. As a result of these discoveries the plaintiffs were compelled to amend their Complaint several times. The plaintiffs remain grateful for the scrutiny of this Court paid to each amendment which regrettably needed to be coupled to the plaintiff's original filing of their complaint.

**DISCUSSION: No. One.** Magistrate Neiman, in his recommendation to this Court, has

-2-

struck everyone of the plaintiffs' amendments and thus, as a result thereof, has deprived the plaintiffs of their opportunity to allow this Court an opportunity weigh the merits, in complete, to the plaintiff's original Complaint. Additionally, the plaintiffs have filed 300 plus pages of documentary evidence, which, if scrutinized, demonstrates that the conduct of each defendant identified by the plaintiffs Complaint extends beyond the threshold of allegations and into the arena of admissions by act and/or omission by each defendant.

In this recommendation to this Court its Magistrate first addresses the motion to dismiss filed by defendants Griffin, Darrin and The Town of Spencer, Massachusetts. Additionally, within pleadings filed on behalf of counsel representing these particular defendants defenses filed *only* by said counsel have been joined to *all* defendants by counsel. The plaintiffs assert that counsel for the above identified defendants lacked proper standing to make defenses for defendants she does not represent and have thus now been joined and ruled on as defenses for *other* defendants not represented by this Counsel within this action. Said defenses were those based on the merits of qualified immunity. They have now been interpreted as defenses of sovereign immunities applied to the defendant Commonwealth of Massachusetts. The plaintiffs objected asserting non standing in a timely manner however those objections have been undressed at any time prior to filing of this action.

The plaintiffs would first address the balance of matters on point with defenses filed by counsel for defendants hereafter referred to "Spencer defendants". Magistrate Neiman's recommendation follows a well settled matter law set out in Wagner v. Devine, 122 F.3d 53, 55 (1st Cir. 1997), Mass. Gen. L. ch. 258 sub sec. 10 (h), and lastly DeShaney v. Winnebago County Dep't of Social Sevices, 489 U.S. 189, 195, (1989).

The plaintiffs cite that their action in no way fits the suit tailored for such circumstances and have clearly alleged that this matter at bar, as it relates to the Spencer defendants, is not merely based on the fact that the Spencer police actors failed to protect or properly protect the plaintiffs rights but in contrast, did so deliberately in furthering a conspiracy following the designs as a cover up for their previous actions in which the plaintiffs alleged were, at first, unintentional after being duped by defendants Gentile, Paicopoulos and Hoyt. The defendants that the plaintiffs allege were on the first tier of this conspiracy. Additionally, the actions of the Spencer players were done so by *deliberate* design to insulate themselves from the consequent cause of harm they caused the plaintiffs *only* after their original inadvertent actions were called to their attention by the plaintiffs. (See plaintiff's motion in opposition to the Spencer players' motion to dismiss)

This second prong assertion by the plaintiffs, clearly set forth in their original complaint, goes without any test of the applicability of that cited cases holding precedent here. Under this light, the plaintiffs claim that this defense adopted by Magistrate Neiman's recommendation is not applicable to the allegations brought forth by the plaintiffs' Complaint. Additionally, disregarded by the failure to allow the plaintiff's to amend any part of their original filing, also goes allegations which further inculpates the Spencer police players. As now, it is noteworthy, to mention that the defendants were allowed to strike and amend their previous filings when the plaintiffs called to their attention that documentation, all previously provided to the defendants, were on file with this Court's Clerk's office. Such irrefutably proved that certain defendants filed responses before this Court knowing them to be false representations and as a result thereof, had inculpated them in an outrageous misrepresentation designed to deceive this Court as a finder of fact.

Next, the plaintiffs address the portion of the recommendation that in essence states that the plaintiffs have failed to make a link between defendant Darrin as not merely being a Supervisor in a Respondent Superior fashion as opposed to what the plaintiffs *do* allege, which was that this investigation and its outcome was engineered with defendant Darrin playing an integral role in manipulating its outcome, with his hand at the helm in it's every aspect. This action against defendant Darrin is filed on the basis of his actions and not merely those of a "municipal supervisor". (see exhibits of evidence)

In regards to the defendant Town of Spencer, again the end result of Magistrate's Neiman's recommendation, also does not support the fact that within the plaintiffs original Complaint that they joined this entity under "any theory of law" not limited to the failure to properly train it's police agents as a matter of a lack of policy, which the plaintiffs so allege and so addressed in some length in one of their motions in opposition to the defendant's motion to dismiss, which, again, went previously passed on nor addressed by this Court until perhaps the issuing of this recommendation. This is unclear to the plaintiffs since no mention of the plaintiff's representation as to this matter has ever received any previous mention at all, nor does it now. As the plaintiffs allege that the Spencer players actions were taken as insulation from civil action, at the end of that rope was their intent to protect their employer, The Town of Spencer. The plaintiffs pray that dismissal not be granted for defendant town of Spencer, Griffin or Darrin. If the plaintiffs have, in fact, unintentionally filed pleadings too confusing or interpreted as too ambiguous as to the averments in the above they ask that this Court allow the motion to dismiss but without prejudice, as recommended for other defendants in the instant Complaint and allow them

to re-file their action in the fashion made in this recommendation.

**No. two:** Addressing the recommendation barring plaintiff William P. Youngworth, III, herein 'W.P.Y., III" of the bringing forth an action on behalf of his son and co-plaintiff William. P. Youngworth, IV, herein "W.P.Y., IV". This recommendation also extends to recommending that plaintiff W.P.Y., IV be barred from bringing *any* action on his own basing the rational on that he is a minor child. The recommendation does not suggest any alternative vehicle recognized in other case holdings as allowing plaintiff W.P.Y., III to bring an action on behalf of his son such as "next of friend' or other alternatives such as giving the parent for the minor plaintiff a deadline to obtain counsel. While plaintiff W.P.Y., III holds little hope for this eventuality having past the challenges made by at least three of the thirteen original defendants creates a slim possibility of obtaining counsel for the minor plaintiff, W.P.Y., IV. As the plaintiffs have perhaps too exhaustively made issue of, the actions of the defendants in this matter have deprived the plaintiffs of all their worldly cash assets and stole their home while abusing them as their caretakers and is at heart of certain defendants alleged motives. The plaintiffs have twice asked for representation appointments in lieu of the extraordinary burdens place on the plaintiffs of one being severely disabled and the other being a minor child. The plaintiffs fully acknowledge that such a request is one very difficult for a court to accommodate in such an action. But despite this have attempted twice to assist the plaintiffs with their request. A gesture not lost on the plaintiffs for one moment. Frankly, this plaintiff has never met a collective group as in this Court's Clerk's office that have treated him more kindly or been more compassionate. This entire Court's personnel should be recognized for their diligence in taking the actions they have in assisting a disabled litigant.

The issue of barring plaintiff W.P.Y., IV from seeking a United States Courts' redress in light of the fact that the alleged conduct of certain defendants in this action are the sole reason why he and co-plaintiff W.P.Y., III are forced to file their complaint Pro Se is lacking in equity. Plaintiff W.P.Y., IV's issue poses a legal matter of some difficulty for this Court. Undoubtedly, a minor enjoys every right protected by the United States Constitution as an adult of age. To deprive him of said redress of the courts because he is indigent, by direct causation of the defendants, perhaps creates a case of first impression before this Court. If plaintiff W.P.Y., IV was being charged with a criminal offense every due process right afforded by his constitutional guarantees would swing into full force and effect but because he is a minor he lacks standing to have serious violations of his rights addressed by the courts. An odd balancing test for certain. Nevertheless, the plaintiff W.P.Y., III's research to date fails to directs him to any legal precedent holding as applicable here. The plaintiffs assert that they were certainly capable of hiring an attorney to represent the minor plaintiff but after his caretakers absconded with monies left to him by his late mother's estate, he can not and thus the defendants have brought about this situation and now the rights of the minor plaintiff become an additional infliction of harm.

The plaintiffs can only look to this Court for an equitable solution to an extraordinarily unique and judicially complex matter than that of stripping the minor plaintiff of his rights to redress the courts for the harm that has been inflicted upon him. To allow the defendants to legally exploit and benefit from a situation that is caused by their own design is lacking in fairness and basic justice.

**No. Three:** Within this Court's Magistrate's recommendation of a dismissal for the defendant Commonwealth of Massachusetts is put forth citing holdings of the Eleventh

Amendment to the United States Constitution.

Within the plaintiffs Complaint they allege that certain second tier players in this action at bar are, in fact, agents of the defendant Commonwealth of Massachusetts who enjoy absolute immunity. These co-conspirators identities have been omitted as defendants. However, their accountability falls at the doorstep of the defendant Commonwealth of Massachusetts as the defendant Commonwealth has vested them with the legal indemnities insulating them from recourse against the plaintiffs' causes of action. These indemnified agents of the defendant Commonwealth acted in a manner of culpability on equal par with the defendants identified by the plaintiffs Complaint they are identified within the facts common to all counts within the Complaint. Their accountability can only be addressed by actions against the entity indemnifying them from judicial responsibility. Wherefore, the plaintiffs pray that recommendation of this Court's Magistrate not be adopted and the Complaint against the Commonwealth not be dismissed, or in the alternative allow the plaintiffs to re-file their action consistent with Magistrate Neiman's recommendation as to the dismissal without prejudice allowing the plaintiffs to re-file their Complaint more concisely as to their theory regarding these immune agents of the Commonwealth.

**No. Four:** As to defendant Jenne McGinnis, formerly identified in the initial filing of the Complaint as the "Safety Plan Advocate". To recall this Court's attention as to this defendant: The plaintiffs alleged that this defendant had went to extraordinary ends to conceal her identity from the plaintiffs, despite their numerous attempts to obtain such. The plaintiffs allege that this was done by design by this defendant to avoid process in any future judicial action. The plaintiffs obtained a default judgment against this defendant after she failed to respond to the plaintiffs action and service of her Complaint after its

service was accepted by her co-worker and co-defendant Carole Cristo. It was only after defendant Cristo's acceptance of the service for this defendant did the plaintiffs obtain her real identity. The plaintiffs alleged then, and so continue to allege now, that the actions of this defendant, a judicial advocate, have remained consistent in where she only responded to the plaintiffs *after* she made them run a service of process gauntlet to pry her identity loose.

Entry of default judgment was entered upon this defendant on the plaintiffs' motion. This Court's Honorable Justice Posner struck that entry of default ruling the "Safety Plan Advocate" was not a legal entity and ordered the plaintiffs to amend their Complaint and re-file service upon this defendant. This was in fact complied with by the plaintiffs, service was made pursuant to this Court's order of same. Upon treeing this defendant in a corner with her pin the tail on the defendant ruse, service was made and accepted. The plaintiffs allege that this defendant attempted to exploit the concealment of her identity knowing that service had been made upon her despite her intentional concealment of her identity to avoid same.

The plaintiffs allege that they have made a well plead statement of facts concerning the conduct of this defendant. Council responding for this defendant sought an order barring this amendment citing rule 12 defenses stating that a cause of action against this defendant would be "futile". The plaintiffs vehemently disagree and argue that this defendant was a key player in the second tier of defendants and in large part created the third tier of defendants. Again, this amendment was made upon the order of this Court. As the "futility" of this Court ordered amendment, the plaintiffs have made the most clear and concise pleadings of all in this case. They alleged, despite theories offered by defendants'

counsel that her actions and conduct were the fruits of "privileged" and "speculation" on the part of the plaintiffs. The plaintiffs' allegations against this defendant were not based on theory or assumption. Quite to the contrary, they were made after observations of witnesses present who clearly both visually and audibly observed this defendant instructing a first tier co-defendant to give knowingly false and perjured testimony to a trial court of the Commonwealth to defeat plaintiffs' W.P.Y., III's challenges the issuing of the restraining order which was obtained cont at all cost and clearly in a most illegal fashion. Clearly privilege stops where a crime starts. And while defendant's counsel will attempt to minimize these allegations against his client they remain as serious as any made within this Complaint. Frankly, the plaintiffs assert this this affair would not have encompassed Eight additional defendants had this defendant not decided to engage in alleged clear violations of criminal law and the plaintiffs most basic rights. This Complaint should not be dismissed in respect to defendant McGinnis. As for striking the plaintiffs' amendment, the plaintiffs remind this Court that it was filed at the direct of this Court. The Complaint should not be dismissed against this defendant and if any rule 8 or 10 issues have been asserted for this defendant the plaintiffs pray dismissal without prejudice allowing them to re-file their action against this defendant.

**No. Five:** In addressing the Magistrate's recommendation of dismissal without prejudice of the plaintiff's complaint against the remaining defendants excluding Gentile, Paicopoulos and Hoyt. In essence counsel for the referenced state defendants and Magistrate Neiman's recommendation cites both rule 8 and 10 violations. The plaintiffs recognize the extraordinary length of their Complaint. They no more desired to craft it so as this Court desired to receive one of its size. The Complaint encompasses over two

years of a carefully crafted conspiracy by the initial defendant to assume all roles of trust and responsibility over the plaintiffs lives and affairs. This initial defendant, Mark A. Gentile, engineered a scheme ( while being present to monitor plaintiff W.P.Y., III's health's rapid decline) to enlist the cooperation of numerous other players and after numerous attempts to dispose of the plaintiffs in various chilling means, then unknown to the plaintiffs, failed, this defendant, acting in concert with the defendants on the first tier employed the Coup de Gras by frankly deceiving, with the assistance of the other first tier defendants, the defendants on the second tier of the conspiracy alleged within this Complaint into taking the most severe of drastic actions in violating the plaintiffs rights. Essentially, the defendants on the first tier, at first, duped most of the defendants on the second tier. After this became all too obvious of a fact to the second tier defendants a massive cover up scheme was employed which bridged defendants on the third tier of this Complaint (the state defendants). Defendants acting on the third tier which were not motivated by the act of a cover up were motivated to treat the plaintiffs as disfavored minorities for wholly different reasons. At the end of day their motives alleged by the plaintiffs were all outside the scope of Constitutional behavior.

The plaintiffs state that if this matter was a criminal complaint or a Civil RICO indictment prosecution than each act, none of which are composite variation alleged previously within the Complaint, would be treated as an overt act and described in the detail the plaintiffs so did within their Complaint. The plaintiffs demonstrate the necessity of the length of their Complaint by pointing out that it was accompanied by over 300 pages of very telling exhibits of evidence on file with this Court's Clerks office. This is a Complaint that encompasses the conduct of 13 defendants and that of several judicially

immune agents of the Commonwealth of Massachusetts. The conspiracy describes some two years of history and frankly the plaintiffs did all they could do to limit it to the size they did. If the plaintiffs have done anything contrary to the Fed. R. Civ. P.'s it was over detailing the facts common to all counts. If this Court adopts the recommendation of Magistrate Neiman the plaintiffs (or remaining plaintiff) will follow this Court's directives but asks this Court to allow him an additional two weeks past the recommendation of Magistrate Neiman (totaling four weeks) in which to re-file his/their Complaint. The plaintiffs make this request in lieu of the fact of the disabilities which face plaintiff W.P.Y, III ,in where he often can not read or type when he loses his complete sight which is a several times per day occurrence. During the period of time between the filing of this Complaint, plaintiff W.P.Y., III has undergone six surgeries ranging from invasive nerve blocking procedures, shoulder reconstruction to vascular surgery on both legs. Plaintiff W.P.Y., III sought rehabilitative help from the Mass. Rehab. Commission but was denied citing the services would be wasted on an individual with so many severe disabilities. At the heart of Mass. Rehab.'s rational is that plaintiff W.P.Y., III should really be receiving assistance from the Mass. Commission for the Blind but then arose a live controversy of the plaintiff's qualification of legal blindness as that Commission has seemingly never encountered such unique issues of a client afflicted such severe infra orbital and optic nerve damages that his vision goes from a severe state of impaired, but *slightly* above the 20/200 qualifying mark, to complete loss, which far exceeds the qualification of legal blindness. It will take no less than a judicial decree to resolve this issue. A matter in which plaintiff W.P.Y., III is attempting to address. Also bringing to this Court's attention is certain medical specialist's desires to explore more surgical treatments after the plaintiff

demonstrates some history of medical stability. Of which this plaintiff has not made that mark as of yet. These surgeries will be of a Neurological nature and at present are being evaluated by plaintiff W.P.Y., III if he desires to risk the dangers associated with such procedures, including unavoidable additional facial disfigurement and possibly exacerbating the optic nerve damage in causing the complete destruction of what is remaining of his optic nerve network. The plaintiff has received a less then promising diagnosis.

**No. Six:** Lastly, Magistrate Neiman has left the plaintiff's Complaint in full force against defendants Mark A. Gentiles, Paicopoulos and Hoyt. The plaintiffs, of course, have no objections to this recommendation. The plaintiffs, despite the volume of the Complaint foresee being able to try their case very quickly and will not bog down this Court's log jammed docket.

The plaintiffs object to the denial of their amendments to their Complaint. These amendments contain information learned by the plaintiffs that certain defendants made repeated attempts on their lives by attacking plaintiff William P. Youngworth, III with various substances in an attempt to murder him by poisoning. Upon bringing this to the attention of other defendants within this Complaint, again, no action was taken for reasons on point with the logic that should they had done so that they would be admitting liability within their conduct charged by the Plaintiff's Complaint. Additionally, also contained with the plaintiffs' amendment to their complaint are serious allegations of the intimidation of witnesses coming forward to support the plaintiffs' Complaint. The climax of which was one of the plaintiff's witnesses being attacked by a knife wielding associate of defendant Mark. A. Gentile while screaming "rat" during this attack in a busy public

restaurant in the City of Worcester, on one of the plaintiffs witnesses. Plaintiff W.P.Y., III negotiated the surrender of his witness employing agents of the ATF after this witness fled the scene of the attack fearing for his safety from certain defendants police handlers who had threatened his wife that they were not going to allow him to "come in alive".

Serious conduct, absolutely caused by the filing of this action, has occurred. The plaintiffs claim that the response of certain defendants in the Complaint who are top Massachusetts law enforcement officers, and investigators acting under their direct orders, are inculpating in nature and of high probative value to the plaintiff's cause of action.

**WHEREFORE:** the plaintiffs pray this this Honorable court not adopt certain recommendations made by Magistrate Neiman and adopt those leaving their complaint in place against defendants Mark A. Gentile, Paicopoulos and Hoyt.

Respectfully submitted,

William P. Youngworth, III, Plaintiff, Pro Se
For the plaintiffs
P.O. Box 2663
Springfield, Ma. 01101
413-736-5727

## CERTIFICATE OF SERVICE

    Comes now the plaintiffs in the attached entitled action who serves upon this Court's clerk the plaintiffs foregoing objection to Magistrate Neimans' recommendation filed on 2/3/06 by causing same to be served via first class United States Mail at the usual places of business for counsel representing defendants in this matter in addition to causing same to be further served upon the pro se defendants in the same fashion.

*/s/ W. P. Youngworth, III*
William P. Youngworth, III
Plaintiff, Pro Se
For the plaintiffs
P.O. Box 2663
Springfield, Ma. 01101

Dated: 2/11/06