UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM P. YOUNGWORTH III,<br>Plaintiff,<br>v.<br>MARK A. GENTILE, et al.,<br>Defendants. | CIVIL ACTION<br>NO. 05-30108-MAP |

## DEFENDANT NANCY ALTERIO'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Defendant Nancy Alterio has moved to dismiss that portion of the Plaintiff's Amended Complaint which relates to her because it fails to state a claim upon which relief can be granted since Ms. Alterio is entitled to immunity for her actions as the Executive Director of the Massachusetts Disabled Persons Protection Commission.

### FACTUAL BACKGROUND

The Defendant Nancy Alterio is improperly identified as the Commissioner of the Massachusetts Disabled Persons Protection Commission ("DPPC"). *Amended Complaint ¶ 10.* In fact, Ms. Alterio is the Executive Director of the DPPC. *Alterio's Affidavit, ¶ 1.* The allegations against Ms. Alterio are contained in paragraphs 88, 89, 90 and 91 of the Amended Complaint. The Plaintiff's substantive allegations against Ms. Alterio appear in paragraph 148. These paragraphs allege, inter alia, that on or about the second week of May 2004, the Plaintiff filed a complaint with the Massachusetts Disabled Persons Commission citing abuse by his caretakers. *Amended Complaint ¶ 88* and *Exhibit A, Alterio's Affidavit.* On May 19, 2004, the Massachusetts Disabled Persons Commission denied his request for assistance. *Amended Complaint ¶ 89* and *Exhibit B, Alterio's Affidavit.* The Plaintiff responded to this denial on May 25, 2004, by writing a letter to the Commission addressed to Ms. Alterio disputing the denial of assistance. *Amended Complaint ¶ 90* and *Exhibit C, Alterio's Affidavit.* On June 4, 2004, the Plaintiff received another denial of his

1

request ". . . directed by the defendant Alterio." *Amended Complaint ¶ 91* and *Exhibit D, Alterio's Affidavit.* The Plaintiff alleges that the conduct of the Defendant Alterio was designed to discriminate against him, treat him as a disfavored minority and act in a conspiracy with other unnamed defendants to cause him injury. *Amended Complaint ¶ 148.*

## ISSUE

The Plaintiff has failed to state a cause of action for civil rights violations against the Defendant Commissioner Alterio as she was acting in her official capacity as Executive Director of the Massachusetts Disabled Persons Protection Commission.

## ARGUMENT

Massachusetts General Laws c. 19C, §2 provides for the creation of the Disabled Persons Protection Commission, including the hiring of an executive director. General Law c. 19C, §4 provides for the investigation of reports of abuse to disabled persons. Abuse is defined in G.L. c. 19C, §1 as follows:

> "Abuse", an act or omission which results in serious physical or emotional injury to a disabled person; provided, however, that no person shall be considered to be abused for the sole reason that such person is being furnished or relies upon treatment

The Plaintiff filed a report of alleged abuse with the DPPC on May 14, 2002. *Exhibit A, Alterio's Affidavit.* As required by the DPPC's regulations, the report was screened in, given a case number and **a** response **was** forwarded to the Plaintiff on May 19, 2002. *Exhibit B, Alterio's Affidavit.* The response was not signed or endorsed by Ms. Alterio. *Exhibit B, Alterio's Affidavit.* DPPC's response indicated that the DPPC has no jurisdiction over the alleged abuse since the Plaintiff did not suffer serious  physical or emotional injuries as a result of the actions of his caretakers. *Exhibit B, Alterio's Affidavit.*

On May 25, 2004, the Plaintiff responded to this denial by writing a letter addressed to Ms.

2

Alterio disputing the denial of assistance. *Exhibit C, Alterio's Affidavit*. This response appears to reiterate the complaints of the Plaintiff's original complaint to the DPPC as it again fails to state any serious physical or emotional injuries as a result of the actions of his caretakers. The DPPC responded on June 4, 2002, again denying the Plaintiff's request in the absence of any serious physical or emotional injuries. *Exhibit D, Alterio's Affidavit*. This second denial was signed by the DPPC Director of Operations, not by Ms. Alterio. *Exhibit C, Alterio's Affidavit*.

The Plaintiff's Amended Complaint fails to make any connection between the Defendant Alterio and any alleged violations of law. Neither the original denial letter by the DPPC of May 19, 2002, *(Exhibit B, Alterio's Affidavit)* or the follow up denial of June 4, 2002, ( *Exhibit D, Alterio's Affidavit*) were signed by Ms. Alterio. Both denials were consistent with DPPC's lack of jurisdiction in the absence of any serious physical or emotional injury to the Plaintiff. Where the Defendant Alterio did not take any personal action against the Plaintiff, the Amended Complaint should be dismissed as a matter of law. See *Cutler v. Federal Deposit Insurance Corporation*, 818 F. Supp.19 (1992).

Further, it appears that Ms. Aleterio is sued only in her capacity as Executive Director of the DPPC. A suit against state officials in their official capacities is a suit against the Commonwealth, which is not a person under either statute. *See O'Malley v. Sheriff of Worcester County*, 415 Mass. 132, 141 n. 13 (1993) (stating "[s]tate officials sued for damages in their official capacity are not 'persons' under § 1983 because the law treats the action as [one] against the official's office and hence against the State"). Here, since the Plaintiff has named Ms. Alterio in her official capacity, the Amended Complaint must be dismissed. Given that the Plaintiff is attempting to sue the defendant in her official capacity and that such a suit is akin to a suit against the Commonwealth

(*O'Malley,* 415 Mass. at 141 n. 13),   the Eleventh Amendment provides immunity from suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. [citations omitted] This bar remains in effect when State officials are sued for damages in their official capacity").

As with the other allegations against state officials in this case, the Amended Complaint must do more than state conclusions; it must at least outline the facts constituting the alleged violations of a civil rights statute. *Pavilonis v. King,* 626 F.2d 1075, 1078 (1st. Cir.), *cert. denied*, 449 U.S. 829 (1980); *Glaros v. Perse,* 628 F.2d 679, 684 (1st. Cir.1980); *Leonardo v. Moran,* 611 F.2d 397, 398 (1st. Cir.1979).  The complaint must allege "not merely a grievance, but a violation by defendant of a legal right belonging to plaintiff." *Massachusetts Rules Practice,* §12.12 (Supp.), *citing Donnelly v. Suffolk University,* 3 Mass. App. Ct. 788, *cert. denied,* 425 U.S. 955 (1975).   A "liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of University of Alaska,* 673 F.2d 266, 268 (9th. Cir.1982). A civil rights complaint is insufficient when based upon "bald assertions, unsupportable conclusions ...." *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989) *quoting Chonquis v. Board of Appeals,* 811 F.2d 36, 379745 (1st Cir.), *cert. denied,* 483 U.S. 1021 (1987). The Plaintiff must also set forth "a causal connection between the conduct complained of and [his] constitutional deprivation." *See Scarpetta v. Murphy,* 624 F.Supp. 33, 35 (1985) (citations omitted). "Courts assessing the sufficiency of a § 1983 claim should not be required 'to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one.'" *South Boston Allied War Veterans Council v. Massachusetts Comm'n Against Discr.,* 1994 WL

879961 (Mass. Super. 1994) *quoting O'Brien v. DiGrazia,* 544 F.2d 543, 546 n. 3 (1st.Cir.1976). The Plaintiff has failed to meet this pleading burden since it appears that the DPPC was following state law. The Plaintiff did not show that he suffered any serious physical or emotional harm in his complaints to the DPPC. If the DPPC acted improperly, the Plaintiff's remedy was to appeal the administrative finding under state law, not allege civil rights violations.

## CONCLUSION

The Plaintiff has failed to state a claim against the Defendant Alterio upon which relief can be granted since Ms. Alterio is sued in her official capacity and has committed no violation of any civil rights laws.

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

/S/ *William P. O'Neill*

_____

William P. O'Neill
Assistant Attorney General
Western Massachusetts Division
1350 Main Street
Springfield, Massachusetts 01103-1629
413-784-1240 ext. 107

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM P. YOUNGWORTH III,
Plaintiff,

v.

MARK A. GENTILE, et al.,
Defendants.

CIVIL ACTION
NO. 05-30108-MAP

## AFFIDAVIT OF THE DEFENDANT NANCY A. ALTERIO

I, Nancy A. Alterio do hereby depose and state:

1. I am the Executive Director of the Massachusetts Disabled Persons Protection Commission ("DPPC").

2. On or about May 14, 2002, the Plaintiff apparently filed a report of alleged abuse with DPPC, a copy of which is attached as Exhibit A.

3. At the screening stage, a determination is made as to whether the alleged victim suffered any physical or emotional abuse as defined by General Laws c. 19C, §1. This determination is made by staff members of the DPPC as reflected in this case by Exhibit B, denying assistance to Mr. Youngworth since he did not allege or suffer any serious physical of emotional injury as a result of his caretaker's actions.

4. On or about May 25, 2004, the Plaintiff wrote a letter addressed to me disputing the earlier denial of assistance. This letter is attached as Exhibit C. I assigned the DPPC's Director of Operations to respond to this inquiry. The DPPC's response is dated June 4, 2002 and is attached is Exhibit D.

5. All of the actions taken by the DPPC were consistent with Massachusetts General Laws and the Code of Massachusetts Regulations. DPPC employees were acting in their official capacities at all relevant times herein.

6. I have never met the Plaintiff. I do not know Mark A. Gentile, Maryanne Paicopoulos or Christine Hoyt and have never made any agreement with any other party or individual to deprive Mr. Youngworth of any of his civil rights.

This statement made under oath and the pains and penalties of perjury on this _____8th_____ day of February 2007.

Nancy A. Alterio,
Executive Director
Massachusetts Disabled Persons
Protection Commission

# Exhibit A



RECEIVED

MAY 14 2004

DISABLED PERSONS
PROTECTION COMMISSION

Disabled Persons Protection Commission
50 Ross Way
Quincy, Ma. 02169

May 13, 2004

Re: Abuse by caretakers

Dear DPPC:

I am a disabled citizen of this Commonwealth. I am the victim of violent crime(s) that have left me permanently disabled. I suffer from an exacerbation of a traumatic injury. My original injuries left my maxilla, orbit and right zygomatic arch held together with steel sutures. The exacerbation of these injuries has left me with infra optic nerve entrapment and optic nerve damage. This condition leaves me with episodic blindness. Additionally, I suffer from severe posttraumatic stress disorders.

To manage my chronic pain a physician prescribes me several hundred milligrams of morphine daily. I am also on other medications for my various disabilities. I am under the care of numerous physicians and specialists. My condition has been "debilitating" for a little over two years now. I am a widower raising a 12-year-old child.

Upon realizing I could not attend to my own needs and successfully give my child the care he needs, I got some help. I requested Mark A. Gentile be a caretaker for both my son and myself. In an arrangement with Mr. Gentile I lent him approximately one hundred thousand dollars. Granting him this loan was the only way he stated he could help us so he could stabilize his business (Derrico's of Worcester) and give us the time we needed.

This loan was structured in a balloon fashion. The interest payments were fashioned so he would be paying our living expenses, and providing groceries, transportation and utilities. This business was in desperate need of a cash bail out so its old obligations could be paid off. The asset used for this loan was a debt owed to my late wife. Mr. Gentile took over the process of collecting these past due monies and upon recovering them I allowed him to borrow the money under the provision of a strict fiduciary agreement secured by a promissory note. Upon Mr. Gentile catching up on the old debt and getting the business stabilized he was supposed to get a 20-year lease on the property. Upon the principle being paid back I would enjoy an annuity that took care of my basic needs for the term of the lease Mr. Gentile was in the process of securing.

This arrangement dates back one year. At the start of this contract Mr. Gentile would have to divide his attention between taking my child and myself to our various physician's appointments, delivering our groceries and paying the monthly household expenses. During the start of this contract we lived in the Town of Easthampton, Ma. Mr. Gentile's business was located in Worcester, Ma. The commuting distance, in all fairness, was considerable.

I transplanted my son and myself to Western Massachusetts to escape unwanted media attention. Additionally, small towns make my stress disorders more manageable. Problems started to arise in Easthampton where Mr. Gentile would become forgetful of his obligations and utilities would get shut off or he would not be able to get out to us with our groceries. Sometimes I would be forced to travel to Worcester to find him to get these matters dealt with.

To ease the burdens on Mr. Gentile we discussed the possibilities of having my sister come from Florida, on a temporary basis, to assist us. I had reservations about this decision due to my sister's past behavior, which had left us estranged for some 18 years. Prior to her arriving I discussed with her over the phone my concerns. My sister assured me that she had matured and was now gravely concerned for my child and myself. Against better judgment, having little other choice, I gave in to Mr. Gentile's wishes.

Shortly after her arrival to my home we relocated to the town of Spencer, Ma. Which is a small suburb outside of Worcester. It was community that Mr. Gentile had roots to and on its face appeared to be a suitable town to live in.

My sister would drive my son and I to Spencer until we found an apartment that would serve our needs. It did not take long to find one as I saw a property owner advertising an apartment with a sign in her yard. I engaged this person, a Christine Hoyt of 25 Clark Street, Spencer. Ma. and shortly we negotiated a lease and moved in. My son was very happy in where there was an excellent public school some 100 yards from our new home. I had Mr. Gentile meet up with Ms. Hoyt and he paid her some $1,700 representing first month, last month and security deposit. I signed all the paperwork on this apartment and signed for Mr. Gentile as well, as I was allowed per cross durable power of attorneys we possessed for each other.

This was late November 2003 that we moved in. Soon, just about every obligation Mr. Gentile used to take care of, my sister was. In December my sister returned to my fathers in Florida and Mr. Gentile's patterns of neglecting his obligations arose again. My sister's appearance on the scene was only supposed to be temporary. The new apartment only had two bedrooms and my sister returned in January demanding her own room. By this time my son and I grew dependant upon her since Mr. Gentile was now too busy to see the smallest of tasks through.

Soon my sister took a job in Mr. Gentile's business. At this point I was forced to sleep on a sofa in the living room. Shortly after that my sister and Mr. Gentile became sexually involved. Mr. Gentile did not live with us. He converted a small living space in his office at the Restaurant and if I did happen to see him it would be late at night when he would come to our home to have sex with my sister.

Problems were growing more persistent as Mr. Gentile was growing more neglectful of his obligations. As well my health was worsening. In February, two weeks before the school vacation I collapsed in my home in the presence of my son and my sister. My medication

mixtures were having adverse reactions.

My sister, now too busy with her employment obligations called a friend of mine in Springfield and asked if she would watch me until the physicians could figure out what was wrong with me. Into the first few days of my being away from home I would phone my child to discover things like neither my sister nor Gentile would be there when he got home from school. That neither of them would prepare his dinners and he would not get food until 8:00PM when Mr. Gentile could "make time" to drive him out a pizza.

I was growing very upset over the deteriorating situation. And would voice my displeasure with both my sister and Gentile. At the end of the first week away from home my son informed me that "his aunt was taking him to Disney world next week" I put an abrupt halt to those plans. The Friday proceeding the school vacation I had my friend drive me from Springfield to Spencer where I collect my son and went back to Springfield with him.

During the 02/04 vacation I was in steady contact with Mr. Gentile and told him I grew tired of his being too busy to honor his obligations to my son and myself. My sister was only brought in until he could get the business more fine-tuned but now she had just about taken over my home and I am sleeping on the couch. That he was not bringing food and just lying to me about bills he said he paid but never did. I informed him that as soon as the school vacation was over I was calling the note and demanded control of my assets since he had demonstrated such irresponsibility in this arrangement. Mr. Gentile told me "I had no money" and hung up on me. I returned home during the vacation needing more of my medication only to find that my sister had stolen it and left $60.00 in the bottle.

My sister came to Springfield the Sunday afternoon before the start of school the following Monday and drove me child and myself home. When she got to my friend's house to pick us up she displayed a digital recorder that Mr. Gentile had provided her with to record me without my knowledge. During the drive home she had advised me to "watch out" for Mr. Gentile because he was "up to something" after I had informed him that I was calling my note.

That Monday, after the school vacation, my sister drove me to an appointment in Northampton. I told her what I was going to do about Gentile financially abusing me. The following day I had an appointment for a surgical consult at the Mass General Hospital. My sister dropped me back off in Springfield after my Northampton appointment. I advised her that she should return to Florida because right after my consult the following day I was going to my Lawyers office in Boston and foreclose on the business and seize my assets anywhere I could find them.

The next day (Tuesday) my consult at the Mass General had been cancelled late Monday afternoon. I had my friend drive me home. Upon arriving home I found that my key did not work in the lock. After finding another door open I got into my house. I called my sister at the restaurant to tell her I was home and would need to travel to my attorney's

office in the morning. My sister responded that "some fucked up shit was going on and would have to call Mark" I immediately did. Whereupon Gentile informed me that a restraining order was taken out on me and I was trespassing and he was calling the police immediately. I called my friend on her cell phone and asked her to come right back to my house.

Upon her doing so we waited out front of my home wondering what to do while my son was due to come home from school. We picked up my child and drove to the police station where they served me with a restraining order taken out by my sister against me. We went to the East Brookfield District Court and asked a Clerk who identified herself as "Carol" "how can my guest have my child and myself thrown out of our own home?" This woman put the matter on for an emergency hearing for 2/26/04. She stated to me that I would need to have my lease or some other proof of my claim. I retorted that everything I own is in my home where I am locked out of and will be arrested if I enter my own home.

Upon the emergency hearing my sister testified that I was merely Mr. Gentile's "guest" and amongst 100% pure perjury she produced a new lease that did not contain my name. I testified that this document was a forgery. The judge granted my sister her restraining order but allowed me back into my home. Gentile ran to the Spencer police department with a "no trespass" order. The police escorted me to my home. While I could legally go back to it I would be violating the restraining order if I went 100 yards near my sister. In short, I had to grab some emergency clothes for my son and myself. In front of the police I grabbed the only papers then important to me. The original lease.

Since then I have sought relief from the Police, the very court who did all this to me and the Worcester County District Attorney's Office. No one will help me. The system has turned their back on my son and I. Gentile and my sister bribed a new lease out of the landlord. I have the original. They did this to dislodge me from my home and destroy financial instruments regarding the loan I made and the assignment of title of four automobiles.

My child and I are now homeless. Our Friend in Springfield took us in. Some gang has already accosted my son on his school bus. I was attacked by some drug dealer's pit bulls while walking to the store. We are forced to take shelter here. Gentile has stolen all our money and vehicles. Additionally, between the time I could hire a police detail to recover what was left of my property, Gentile and my sister stole the items enclosed on the provided list.

The Worcester County officials will do nothing. They are dug in behind these two criminals. If they were to grant us any relief they would be admitting liability. I am disabled. I never filed for my pension prior to when I did weeks ago. We had enough to live off of but now everything has been stolen. This situation has worsened my condition and has my son back in weekly counseling.

Very shortly I will be declared legally blind. Surgery is coming after the next battery of

testing and new referrals. I am disabled and I was victimized by Gentile and recently discovered that Gentile was going to murder me when my sister was due to take my son to Florida. I asked the court to give me my house back and restrain those people but they won't even allow me to make my argument for the record. Gentile taunts me with his political connections in Worcester County. To demonstrate how bad it is, when I filed a complaint with the attorney generals office in Worcester a James Gentile responded in writing stating that my complaint seeking prosecution for a violation of the civil rights of a disabled citizen of this state and a minor child "does not come under the purview of the attorney generals office."

Your agency appears to be established to help people like myself. I am so requesting this office's assistance in prosecuting two felons who committed crimes against a minor child and a disabled citizen of this state.

Very truly yours,

William P. Youngworth, III
P.O. Box 2663
Springfield, Ma. 01101
413-478-9430
cc:file

INVENTORY LIST OF STOLEN PROPERTY

ITEM DESCRIPTION                                        COST

KITCHEN

1. Epergne (centerpiece), Blue & White made by Fenton Glass Co.
   $450.00
2. Oak & Brass toolbox 18" X 18"(decorative)            $  80.00
3. Iron & Ironing Board                                 $  40.00
4. Craftsman Drill & Flashlight Set (charger & extra cell)  $100.00
5. Set of Tension Bar Clamps (behind kitchen door)      $  60.00
6. Yellow Plastic Toolbox (filled with assorted hand tools)  $100.00
7. Panasonic Cordless Phone                             $  90.00
8. Pair of Copper Gourmet French Skillets               $500.00
   with brass riveted handle and manufactures stamp

BEDROOM #1

1. Zero Briefcase (in closet - gift)                    $900.00
2. Inside Briefcase - Financial Instruments (promissory note, assignment of title for four
   vehicles and part of William P. Youngworth IV's coin and stamp collection)
                                   Value presently unknown but
                                   exceeding $250.00
3. Sketch Pad w/Charcoal Studies by Edna Hibble given to Florence Sacarob
                                   Value presently unknown but
                                   Exceeding $250.00
4. Various Clothing Items in Closet                     $250.00 +
5. Documents (transcripts-$3.00 per page x 500)
6. Swiss Army Knife in Box                              $  80.00
7. 2 Safari Land Bullet Proof Vests                     $400.00
8. Arts & Crafts Loetz Vase                             $475.00
9. Loetz Dimple Vase                                    $  90.00
10. Loetz Vase (ribbon applique)                        $450.00
11. Loetz Vase                                          $110.00
12. Six Murano Glass Pieces                             $600.00
13. Millifore Lamp                                      $288.00
14. 35mm Olympus Camera                                 $175.00
15. Gold Cross Pen Set                                  $100.00
16. Radio/Alarm Clock                                   $  25.00
17. Gold Watch (Geneve)                                 $1680.00

18. Diamond Ring                                                    $200.00
BEDROOM #1 (cont'd)

19. Gold Chains (six or more)                                      $1000.00
20. Assorted Rings, Hebrew Charms, two Tank Watches and Cuff Link
    Collection                                                     $1500.00
21. Sterling Silver Tea Set (packed in storage box in closet)
    Property of late J.S.Youngworth, signed Arthur Stone,Gardner Massachusetts
                                                              Value Unknown
22. TV Remote Control                                                  ?
23. Two Fishing Poles & Tackle Box (in closet)                      $150.00


GUEST BEDROOM

 1. VCR                                                            $ 75.00
 2. TV Remote Control                                                 ?
 3. IBM Laptop Computer w/ Carrying Bag (bought used)              $250.00
 4. Craftsman Tool Set (in closet)                                 $175.00
 5. Husky Tool Set (in closet)                                     $100.00
 6. Walkie Talkie Set (in closet)                                  $100.00
 7. Luggage Set (in closet)                                        $250.00
 8. Dress Shirts                                                   $250.00
 9. Down Quilts                                                    $100.00
10. Two New Bed Sheet Sets                                         $240.00
11. 30 VCR Tapes                                                   $300.00
12. Portable Stereo/Radio Player                                   $ 50.00
13. Family Photo Album                                                ?
14. Millefori Vase                                                 $135.00
15. Millefori Rose Bowl                                            $155.00
16. Millefori Vase                                                 $190.00
17. Paper Weight Collection, approx. 36 items by makers Baccarat, Tiffany, Pairpoint,
    Gunderson Pairpoint, Barry Ettna, Murano, Millefori, Czech.,Veinni and others
    which were not inscribed                                      $3000.00 +

**Additional Items may be added at later point

It is the complainant's belief that some of these items might be being stored in Mark A.
Gentile's back office safe located at Derrico's Restaurant, 145 E. Central St., Worcester,
MA.

# Exhibit B



# The Commonwealth of Massachusetts
## Disabled Persons Protection Commission
### Fifty Ross Way
### Quincy, Massachusetts 02169

MITT ROMNEY
GOVERNOR
JACK L. McCARTHY
CHAIRPERSON
JAMES M. BORGHESANI
COMMISSIONER
CARLA A. GODDWIN, Ph.D.
COMMISSIONER

Nancy A. Alterio
Executive Director

(617) 727-6465 V/TTY
1-800-245-0062 V/TTY
FAX (617) 727-6469
HOTLINE 1-800-426-9009 V/TTY

William P. Youngworth, Iii
P.o. Box 2663
Springfield, MA 01101

May 19, 2004

RE:  **Screening Decision**

Dear Reporter,

The Disabled Persons Protection Commission (DPPC) has received your report of suspected abuse of a person with a disability.  On behalf of the DPPC, we are writing to provide you with the following information.

DPPC's jurisdiction is established by M.G.L. c. 19C, and 118 CMR, the Commission's guiding statute and regulations.  In order for a report of abuse to be screened in for investigation, the following jurisdictional criteria must be met:

*The suspected abuse must involve a **disabled person(s)** between the ages of eighteen (18) and fifty-nine (59), who has sustained a serious physical injury and/or serious emotional injury as the result of an act or omission by their caretaker(s).*

After careful review of the information provided and all other information available at this time, it has been determined that the situation reported does not meet DPPC's jurisdictional criteria.  Specifically, **the allegation is financial in nature, which is not included in the definition of M.G.L.c.19C**.  Please be advised that this screening decision is based on the statute and regulations under which DPPC has the authority to operate, and the information that was initially provided to the Hotline.  This decision may only be reconsidered if additional information becomes available.  If this should occur, please contact our Hotline at (800) 426-9009.

Your report has been forwarded to **MRC** for their review.  As a result, you may be identified as the "complainant" within that agency's regulatory system.  If you are a non-mandated reporter you have the right to object to your being identified as the person filing the complaint.  To file an objection, you must contact the Investigations Unit at **MRC**.

If you are a mandated reporter, M.G.L. c. 19C requires you to forward a written report to the Commission within forty-eight (48) hours of making the oral report.  If this requirement creates undue hardship, it may be waived.  If your report concerns the death of a person with a disability as a result of abuse, you are also required to immediately report the death, in writing, to the District Attorney for the county in which the death occurred and to the Chief Medical Examiner of the Commonwealth.

Please be advised that your report is confidential and every effort will be made by the Commission to maintain the confidentiality of your identity and to protect you from adverse consequences for having reported the abuse.

You may be contacted again for further information. Upon written request by you, the Commission will notify you: whether the information contained in the report constituted a reportable condition; of the name, address and telephone number of the agency that conducted the investigation; whether there was reasonable cause to believe abuse occurred and whether protective services have been or will be provided; and whether there was insufficient cause to believe that abuse has occurred.

Thank you for filing a report with the Disabled Persons Protection Commission. Effective and prompt reporting is a significant part of the Commission's efforts to protect individuals with disabilities in Massachusetts.

DPPC Intake Unit Screeners

Enclosure

# Exhibit C

Nancy A. Alterio
Executive Director
Disabled Persons Protection Commission
Fifty Ross way
Quicny, Ma. 02169

May 25, 2004

Dear Director Alterio:

On 5/19/04 I received a response from my complaint by your agency. The gist of your
agencies' letter was denying my request for assistance based on my allegation that my
complaint was "financial in nature, which is not included in the definition of M.G.L.
c.19C."

Please note my exception to your agencies' decision. I believe that my complaint is right
on point, as I am disabled citizen of this Commonwealth and fit every criteria governing
your agency as an individual who should be assisted by DPPC.

I believe my letter of complaint encompassed many of your bylaws. More specifically;
NEGLECTFUL CONDITIONS
A. (5) Medication mismanagement. My caretakers often stole my narcotic medications and
this is well documented by my Primary Care Physician.
LIVING ENVIRONMENT
2. Caretaker fails to shop, prepare meals or feed disabled person, or meals are missed.
Often the caretaker would leave me isolated and force my to find my own way some 50
miles to get food.
7. Caretaker has disabled person sleep on sofa or floor.
My caretaker took my bedroom forcing me to sleep on the sofa.
8. Caretaker evicted disabled person and/or abandoned.
9. Caretaker mismanages finances or misappropriates funds, e.g.: for own use.
In addressing these two bylaws of your agency; When I discovered that my caretakers
were mismanaging the funds I entrusted them with to see to my basic needs (my child's
also) I demanded an accounting and repossession of the funds belonging to my child and
myself for our welfare. In response to this demand these two caretakers whom I complain
to your agency about, went to a local court, obtained a restraining order, forged a new
lease excluding my tenancy, had the courts displace my child and myself. Left us homeless
and stole all our funds, which we depended on to live.

I believe my complaint does belong before your agency. I have attempted to seek the
redress of the court that took this action against us in a motion to vacate. The court will
not allow me an evidentiary hearing into this matter as allowing me to establish my
complaint as a matter of record places the court in a situation of liability. I have initiated
the appropriate judicial complaints as to this courts' conduct but the abuse these
caretakers subjected me to clearly fits within your bylaws and properly belongs before

RECEIVED

MAY 2 7 2004

DISABLED PERSONS
PROTECTION COMMISSION

your agency for investigation and prosecution.

I could cite numerous other violations of the bylaws that were enacted for DPPC. I believe if you reviewed my original complaint again you would see this is not merely a complaint about financial abuse but a complaint of abuse against a disabled person who entrusted caretakers to assist him and ended up abusing him.

As to the actual mental damages inflicted upon my child and myself, I welcome you to contact Dr. Karen Cocoluloto or Estey Ticknor, M.S.W., L.C.S.W. of the Service Net Agency of Northampton, Massachusetts. In clinical terms they could demonstrate a brightline case of abuse of which I make complaint to your agency of. Additionally, they could, and are willing, to provide any information your investigator's desired which would demonstrate the actual damages inflicted upon myself (a disabled citizen of this Commonwealth) and my minor child by the caretakers of whom I base my complaint upon.

Thus far, in my opinion, because of a trial court of the Commonwealth being connected at the hip to these two felons, every state agency I have appealed to for help have denied me. Very shortly I will consider all avenues of relief available to a disabled person denied and thereupon seek redress via the Federal Courts citing every agency who has discriminated against me or failed to act due to conflicts of interests as defendants.

Very truly yours,

William P. Youngworth, III
P.O. Box 2663
Springfield, Ma. 01101

cc:File

# Exhibit D



# The Commonwealth of Massachusetts
## Disabled Persons Protection Commission

50 Ross Way  •  Quincy  •  Massachusetts  •  02169

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR
**JACK L. McCARTHY**
CHAIRPERSON
**CARLA A. GOODWIN, Ph.D.**
COMMISSIONER
**JAMES M. BORGHESANI**
COMMISSIONER

**NANCY A. ALTERIO**
Executive Director

(617) 727-6465 (V/TTY)
(800) 245-0062 (V/TTY)
FAX (617) 727-6469
Hotline: (800) 426-9009 (V/TTY)

June 4, 2004

Mr. William P. Youngworth III
P.O. Box 2663
Springfield, MA 01101

Dear Mr. Youngworth,

I am responding to your letter dated May 25, 2004 on behalf of Nancy A. Alterio, Executive Director of the Disabled Persons Protection Commission. I have reviewed the information you provided regarding the abuse you allegedly suffered at the hands of Mr. Gentile. Although your portrayal of the events is compelling, the information does not support the notion that you have suffered abuse as it is defined by M.G.L. c. 19C. Therefore, the Commission has no jurisdiction to investigate.

I am certain that there are service providers in your community that can assist you in addressing your concerns. I suggest that you discuss your needs with Dr. Cocoluloto and/or Ms. Ticknor to determine how they can best be addressed.

Yours truly,

Emil DeRiggi
DPPC Director of Operations

Cc: Nancy A Alterio, DPPC Executive Director