UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM P. YOUNGWORTH, III,  )
       Plaintiff  )
         )
         )
         )
       v.  )   Civil Action No.  05-30108-MAP
         )
         )
         )
MARK A. GENTILE, ET AL.,  )
       Defendants  )

REPORT AND RECOMMENDATION WITH REGARD TO THOMAS REILLY, JOHN J.
CONTE AND JAMES GENTILE'S MOTION TO DISMISS and CAROLE CRISTO'S
MOTION FOR SUMMARY JUDGMENT (Document Nos. 97 and 101)
May 29, 2007

NEIMAN, C.M.J.

On February 27, 2006, District Judge Michael A. Ponsor, upon recommendation of the undersigned, ordered William P. Youngworth, III ("Plaintiff") to amend his verbose *pro se* civil rights complaint. (Document No. 72.) Plaintiff did so by narrowing his allegations and eliminating several defendants. Then, on November 30, 2006, Judge Ponsor, again upon recommendation of the undersigned, ordered that several counts in the amended complaint be dismissed in whole or in part and that one of the remaining nine defendants, Jenne McGinnis, be dismissed entirely. (Document No. 95.) Plaintiff thereafter voluntarily dismissed another defendant, Nancy Alterio. (Document No. 111.)

Three of the remaining seven defendants -- former Attorney General Thomas Reilly ("Reilly"), former Worcester County District Attorney John J. Conte ("Conte") and

James Gentile ("Gentile"), who is identified in the complaint as an Investigator in the Office of the Attorney General (together "the State Defendants") -- have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A fourth defendant, Carole Cristo ("Cristo"), Office Manager of the East Brookfield District Court, has filed a separate motion for summary judgment pursuant to Fed. R. Civ. P. 56. The other three defendants, who are themselves proceeding *pro se*, have either answered the complaint or remained silent.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Judge Ponsor has referred both motions to this court for a report and recommendation. (See Document No. 84.) For the reasons stated below, the court will recommend that the State Defendants' motion to dismiss be allowed with respect to Reilly and Conte, but denied with respect to Gentile, and that Cristo's motion for summary judgment be allowed.

## I. THE STATE DEFENDANTS' MOTION TO DISMISS

When faced with a motion to dismiss under Rule 12(b)(6), the court is required to construe the allegations in favor of the plaintiff, the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). Moreover, as applicable here, a *pro se* plaintiff is entitled to liberal construction of his allegations, no matter how inartfully pled. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In the end, however, even a *pro se* complaint should be dismissed if "there is a 'failure to state a claim upon which relief may be granted.'" *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 2 n.1 (1st Cir. 2005) (quoting Fed. R. Civ. P. 12(b)(6)). *See Rockwell v. Cape Cod Hosp.*, 26

F.3d 254, 260 (1st Cir. 1994). The court believes this is just such a case with respect to Reilly and Conte, but not with respect to Gentile.

The State Defendants argue that the doctrine of absolute prosecutorial immunity precludes the only two counts which target them: Count One, alleging a violation of 42 U.S.C. § 1983 ("section 1983"), and Count Two, alleging a conspiracy in violation of section 1983. The court will first describe the doctrine of absolute prosecutorial immunity and then individually analyze the motion with regard to each of the three State Defendants.

"A state prosecutor has absolute immunity from suit under civil rights laws for the initiation and pursuit of a criminal prosecution, as well as for [his] actions during judicial proceedings." *Suboh v. City of Revere*, 141 F. Supp. 2d 124, 137 (D. Mass. 2001) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), and *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)), *rev'd on other grounds*, 298 F.3d 81 (1st Cir. 2002). As District Judge William G. Young has observed, the reasoning behind the doctrine of absolute prosecutorial immunity is clear: "[It] is intended to protect the prosecutor's independence as [he] makes difficult determinations regarding matters within [his] discretion." *Id.* "When a prosecutor is enshrouded in absolute immunity," Judge Young continued, "the protection is not eroded no matter how erroneous the act may have been, how injurious its consequences, or how malicious the motive." *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985), and *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (*per curiam*)), *rev'd on other grounds*, 298 F.3d at 81. *See also Reid v. New Hampshire*, 56 F.3d 332, 337 (1st Cir. 1995) (noting that even an allegation that

"prosecutors repeatedly misled the trial court in order to conceal their alleged misconduct does not defeat absolute immunity") (citing *Burns v. Reed*, 500 U.S. 478, 489-90 (1991)).

In the court's view, there can be no question that Reilly is entitled to absolute prosecutorial immunity. The complaint mentions Reilly in only five of its 163 paragraphs and only three of those paragraphs contain any substantive factual allegations, to wit: on April 10, 2004, Plaintiff lodged a complaint and requested assistance from Reilly's Central Massachusetts Office (¶ 72); on April 19, 2004, Plaintiff sent a "second letter . . . directly to the attention of . . . Reilly" concerning alleged crimes that had been committed against him and his child (¶ 73); and on April 23, 2004, Plaintiff sent a third letter to Reilly complaining of an "inappropriate relationship" between Gentile and his purported "cousin," co-defendant Mark Gentile (¶ 77). The other two paragraphs contain only what can be described as unsupported conclusions of law to the effect that Reilly's "conduct" (actually no conduct has been alleged) was "punitive retaliation for . . . [P]laintiff's refusal to cooperate with his investigators in a previous investigation" (¶ 146) and that Reilly "discriminate[d] against . . . [P]laintiff . . . while acting in a conspiracy with other defendants to retaliate against [him]" (¶ 147). In the court's estimation, these scant allegations targeting Reilly do nothing to erode the absolute prosecutorial immunity he enjoyed as the state's top law enforcement officer. As Judge Young recognized, it is the duty of the courts to protect the independence of the state's prosecutors as they make difficult decisions regarding matters within their discretion. *See Suboh*, 141 F. Supp. 2d at 137.

Nor does the court believe that the complaint's thirteen paragraphs targeting Conte erode the absolute immunity he enjoyed as the chief prosecutor in Worcester County. The complaint alleges the following as to Conte: on March 4, 2004, Plaintiff sent a complaint to him alleging "perjury" by certain individuals (¶ 56); on March 22, 2004, Plaintiff received confirmation from Conte's office that the complaint would be investigated (¶ 61); on or about April 10, 2004, Plaintiff amended his complaint to include alleged "larceny" and also asserted that Conte's "lack of action was an indication that he intended to take no action" (¶¶ 62, 70, 71); on May 6, 2004, Plaintiff filed another complaint with Conte, this one alleging that there was "a conspiracy to murder him" (¶ 83); on May 8, 2004, Plaintiff received a letter from Conte's staff directing Plaintiff to take his complaints elsewhere (¶¶ 84-87); and on April 4, 2005, Plaintiff sent yet another complaint to Conte alleging "attempted murder" (¶ 109), a charge that Conte also apparently decided not to pursue.

As with Reilly, the court believes that these thin allegations targeting Conte go directly to his discretionary decisions as a prosecutor. Moreover, the court notes that the remaining two paragraphs in which Conte is named (¶¶ 149, 150) are essentially the same unsupported conclusions of law which Plaintiff purported to direct at Reilly. In short, the court believes that Conte is also entitled to absolute prosecutorial immunity and ought to be dismissed from any further activity in this case.

To be sure, with respect to both Reilly and Conte, the court recognizes that "[t]here is no heightened pleading requirement for section 1983 civil rights claims." *See*, *e.g.*, *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 49 (1st Cir. 2005) (citing, *inter*

*alia*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). The court also acknowledges Plaintiff's lament that he was forced to "strip down" what he calls the "extraordinary complexity" of his original complaint. (Document No. 109 ("Plaintiff's Opp'n to State Defs.' Motion") at [7[1]].) But here, given the well-settled prosecutorial immunity defense both Reilly and Conte enjoy, the court deems it amply "clear that no relief could be granted [against them] under any set of facts that could be proved consistent with [Plaintiff's] allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing Fed. R. Civ. P. 12(b)(6)). Accordingly, the court will recommend that both Conte and Reilly be dismissed forthwith from this case on the basis of absolute prosecutorial immunity. *See also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (noting that the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation") (citations omitted).

The court, however, will not extend this recommendation to James Gentile for at least two reasons. First, the State Defendants have offered no legal authority for the proposition that absolute prosecutorial immunity covers *investigators* such as Gentile. Rather, the caselaw on the topic -- all of which admittedly appears to originate from outside this circuit -- generally holds that those who "investigate dangerous situations," unlike prosecutors, "are ordinarily not protected by absolute immunity." *Hodorowski v. Ray*, 844 F.2d 1210, 1214-15 (5th Cir. 1988) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967) (in turn noting that "[t]he common law has never granted police officers an

---

[1] Pages numbers to Plaintiff's papers are in brackets because he includes none.

absolute and unqualified immunity")). *See also Snell v. Tunnell*, 920 F.2d 673, 689 (10th Cir. 1990) (applying *Hodorowski* to social workers); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 272 (S.D.N.Y. 2006) (observing that, in the Second Circuit, prosecutorial immunity does not extend to those who "only *investigate* . . . and ha[ve] no authority actually to brings charges and initiate a criminal prosecution") (citing *DiBlasio v. Novello*, 344 F.3d 292, 301 (2d Cir. 2003), and *Scotto v. Almenas*, 143 F.3d 105, 112-13 (2d Cir. 1998)) (emphasis in original). *But see Kleinman v. Multnomah County*, 2004 WL 2359959, at *8 (D. Or. Oct. 15, 2004) (noting that in the Ninth Circuit "investigators, employed by a prosecutor and performing investigative work in connection with a criminal prosecution, are entitled to the same degree of immunity as prosecutors") (citations and internal quotation marks omitted). A simple explanation for this is that investigators such as Gentile, unlike prosecutors such as Reilly and Conte, "lack[] the authority to initiate charges against" individuals. *DiBlasio*, 344 F.3d at 301.

Second, and perhaps more to the point, the factual allegations targeting Gentile are significantly more detailed than those directed at Reilly and Conte. For example, the complaint specifically alleges that Gentile: had an "inappropriate relationship" with his purported cousin, co-defendant Mark Gentile, and perhaps others (¶¶ 77, 151); was involved in "passing information . . . from the Worcester Attorney General's office" (¶ 123); and, while "spreading rumors . . . that he wasn't related to Mark Gentile," admitted that he "was present with [Mark] Gentile . . . when [Mark] Gentile received a warning call on his cell phone tipping him off that 'the ATF would be showing up in about within [sic] 15 minutes' to search for automatic weapons that [Mark] Gentile had secreted in a

storage trailer adjacent to his Worcester restaurant" (¶ 124). The complaint also alleges that Mark Gentile told Plaintiff that his connection to James Gentile made him "untouchable" in Worcester. (*Id.* ¶ 76.)

Granted, the mere fact that Plaintiff has made such allegations against Gentile and his purported "cousin" is a far cry from proving them.[2] Moreover, as noted in this court's October 31, 2006 report and recommendation, the court does not mean to suggest that Plaintiff "will necessarily survive . . . a motion for summary judgment, *see* Rule 56, or a similar such attack." (Document No. 94 at 6.) For now, however, considering the federal rules' relatively modest pleading requirements, the leniency accorded *pro se* litigants, and the targeted factual allegations against Gentile, the court will recommend that, as to him only, the State Defendants' motion to dismiss be denied. (See *id.* at 6-7.)[3]

## II. CRISTO'S MOTION FOR SUMMARY JUDGMENT

The motion for summary judgment filed by Cristo, Office Manager of the East Brookfield District Court, takes a slightly different tact. She argues, as supported by her own affidavit, that she is entitled to absolute quasi-*judicial* immunity for the section

---

[2] As such, if this report and recommendation is adopted, Plaintiff will be expected, as he acknowledges, to try his case against Gentile and the three *pro se* defendants "on hard fact and not a wisp of fog." (Plaintiff's Opp'n to State Defs.' Motion at [5].)

[3] In so recommending, the court recognizes that the State Defendants have also suggested that the action against them is really one against the state and, thus, barred by the sovereign immunity doctrine contained in the Eleventh Amendment. With respect to Gentile, however, the thrust of the complaint is that he was acting individually and outside any authority he may have had as a surrogate for the state.

1983 allegations leveled against her, *i.e.*, that in February of 2004 she deliberately denied Plaintiff's request to file a chapter "209A" application for protection from abuse by his "caretakers," conspired with others to that end, and "verbally harass[ed]" Plaintiff on at least one occasion. (See Complaint ¶¶ 44, 45, 49, 68 and 153.) In response, Plaintiff has filed both a memorandum of law and a counter-affidavit in which he challenges, respectively, Cristo's legal and factual contentions. For the following reasons, the court finds Cristo's arguments more convincing.

First, the law: "There is no question that [judges are] protected by absolute immunity from civil liability for any normal and routine judicial act." *Cok*, 876 F.2d at 2 (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Id.* (citing *Cleavinger*, 474 U.S. at 199-200). *See also Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) ("Except where judges act completely without jurisdiction, they are protected from liability under section 1983 by the well-established doctrine of judicial immunity.") (citations omitted).

It is also well-settled, Plaintiff's protestations to the contary, that certain "non-judicial persons fulfilling quasi-judicial functions" share in the court's absolute immunity. *Cok*, 876 F.2d at 3 (holding that *guardian ad litem* and conservator of assets both "functioned as agents of the court and [had] absolute quasi-judicial immunity for those activities integrally related to the judicial process") (citing *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). This includes court clerks who carry out the court's official directives. *See Slotnick*, 632 F.2d ast 166 (citing cases). *See also Kermit Constr. Corp. v. Banco*

*Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976) (recognizing that absolute immunity protected a state receiver who carried out the orders of an appointing judge). "Conversely, absolute immunity would fail to attach only when such persons perform acts which are clearly outside the scope of their jurisdiction." *Cok*, 876 F.2d at 3 (citations omitted). "Finally, allegations of malice, or bad faith or [even] a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders." *Id.* (citations omitted).

Now, the facts: Unlike with a motion to dismiss, "[t]he sole purpose of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required." *Rose v. Baystate Med. Ctr.*, 985 F. Supp. 211, 214 (D. Mass. 1997) (citing, *inter alia*, *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995)). To that end, the court deems Cristo's affidavit to constitute her statement of undisputed facts and Plaintiff's affidavit to comprise his counter-statement. *See* Local Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts. As required, the court has viewed all disputed facts in a light most favorable to the Plaintiff, the non-moving party, *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir. 2005), but omitted any "conclusory allegations, improbable inferences, and unsupported speculation," *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 26 (1st Cir. 2006).

As Office Manager of the East Brookfield District Court, Cristo held administrative and managerial duties. (Cristo Aff. ¶¶ 1, 2.) She would also occasionally act as a clerk for the screening of applications for abuse prevention

petitions under Mass. Gen. L. ch. 209A ("chapter 209A"). (*Id.* ¶ 2.) One function of the screening process is to determine whether an alleged abuser is a "family or household member" of the petitioner. (*Id.* ¶ 3.) Since Plaintiff alleged in his chapter 209A application that his abuse was being committed by his "caretakers" -- *i.e.*, co-defendants Mark Gentile and Maryanne Paicopoulos -- Cristo determined that they were not "family or household members." (*Id.* ¶¶ 5, 6.) Accordingly, she denied his application for abuse prevention. (*Id.* ¶ 7.) She also informed Plaintiff that a restraining order against non-family or non-household members would be available to him upon application at the Worcester Superior Court under that court's general equity powers. (*Id.* ¶ 8.) According to Cristo, Plaintiff "then created a disturbance and became disorderly" and "was asked to the leave the Clerk's Office." (*Id.* ¶ 9.)

Plaintiff does not dispute these allegations. He does, however, assert that he had "simply requested a [chapter 209A] form . . . from any of the several clerks working behind the desk in the clerk's office." (Plaintiff's Aff. ¶ 7.) He then asserts that Cristo "intercepted [him] from obtaining the services of" one of those "authorized court official[s]." (*Id.* ¶ 8.) According to Plaintiff, Cristo then "[took] it upon herself to throw [him] out of what she claimed was 'her office.'" (*Id.* ¶ 7.) Moreover, Plaintiff continues, Cristo really "knew that [he] was seeking legal protections from abuse from members of his own household," was actually exceeding her authority and exercising the power of a "clerk magistrate," and "regularly . . . seems to dominate the [c]lerk[']s . . . office . . . by taking actions far beyond the scope of her real duties." (*Id.* ¶¶ 5, 9, 10.)

In the court's view, there is no question that Cristo is entitled to absolute quasi-

11

judicial immunity. Even viewing Plaintiff's factual allegations in a light most favorable to him, it appears clear that Cristo was at all times "function[ing] as [an] agent[] of the court" with respect to "activities integrally related to the judicial process." *Cok*, 876 F.2d at 3. Moreover, there appears nothing upon which to infer malice, bad faith or conspiracy, despite the fact that such allegations, as indicated above, would not affect Cristo's quasi-judicial immunity. *See id.* Finally, Plaintiff has cited no facts or law, other than his own speculation, that Cristo was performing any act which was "clearly outside the scope of [her] jurisdiction." *Id.* For all these reasons, therefore, the court will recommend that Cristo's motion for summary judgment be allowed.

### III. CONCLUSION

For the foregoing reasons, the court recommends as follows:

(1)   that the State Defendants' Motion to Dismiss (Document No. 97) be ALLOWED with respect to Reilly and Conte, but DENIED with respect to James Gentile; and

(2)   that Cristo's Motion for Summary Judgment (Document No. 101) be ALLOWED.[4]

---

[4] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another

DATED: May 29, 2007

       /s/ Kenneth P. Neiman  
KENNETH P. NEIMAN  
Chief Magistrate Judge

---

party's objections within ten (10) days after being served with a copy thereof.