

SCANNED

United States District Court
District of Massachusetts

FILED

William P. Youngworth, III, Plaintiff
v.
Mark A. Gentile, et al.,
   Defendants

Civil Action No. 05-30108-MAP

U.S. DISTRICT COURT

### Defendant Christine Hoyt's Motion to Dismiss

#### Introduction:

On the date of August 14, 2007, at the United States District Court, Springfield, MA, Clerk Magistrate Judge Kenneth P. Neiman, granted defendant Mark Gentile permission to submit, by Sept. 4, 2007, a motion for dismissal of Civil Action No. 05-30108-MAP. At the same time, the honorable magistrate granted to remaining defendants Christine Hoyt and Maryanne Paicopoulos until Sept. 11, 2007 to review and join said motion if they so chose.

As of Sept. 5, 2007, this defendant, Christine Hoyt, had not received any related document from defendant Mark Gentile and spoke to him on the phone. Gentile indicated that he had not as yet completed and or submitted the motion and would deliver it to Christine Hoyt, possibly on the next day.

As of today, Sept. 9, 2007 I, Christine Hoyt have not received this motion from Gentile. In an attempt to comply with the courts time frame of responding by Sept. 11, 2007, I hereby request to submit the following motion to dismiss on my behalf based on Rule 12(b)(6), and including reference to the Massachusetts General Laws, section 201, Durable Power of Attorney.

**Defendant Christine Hoyt's Motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim upon which relief can be granted and motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure.**

1.   In support of these motions, defendant Christine Hoyt (herein called CH) states that the allegations which William P Youngworth III (herein called WY) states in his complaint as the basis of his claim, are also, in the exact same complaint document, contradicted and stated by WY himself to be otherwise, therefore the plaintiff fails in his obligation to provide the grounds of his entitlement to relief.

2.   The basis of WY's claims against CH stating that he was illegally evicted from his home is initially addressed as stated in paragraph 173 through 181 of his amended complaint. The synopsis of these paragraphs is as follows:

   a.  In the fall of 2003 WY did visit the property of CH at 25 Clark St., Spencer, MA and viewed 2 vacant apartments. During this visit, for a short period of

  time, a youngster identified by WY as his son did enter and also look at apartment 1F with WY, and then left to wait in the car.
  b. That he did indicate at that time that a Mark Gentile (herein called MG), whom he stated was his 'brother' would be the person named in the lease agreement.
  c. That his sister would be returning from Florida after Thanksgiving to occupy the apartment to care for his son.

3. None of these above facts is disputed. However, at the time of this visit, WY identified himself as temporarily unemployed from the antiques business due to the need for what he described as imminent surgery. Further he stated, that MG who he identified as his 'brother' and managed D'Errico's Restaurant in Worcester, was renting this apartment for the following reasons:

  a. WY needed facial surgery in Boston that was to be scheduled as soon as possible after Thanksgiving
  b. That due to the long hours involved in running a restaurant, although MG was willing to help his brother (WY) with his nephew in providing a home, he could not commute to/live in the Springfield area nor would he be available for long hours at a time.
  c. That WY and MG had a sister who would be visiting her father in Florida for Thanksgiving and upon her return who move in the apartment with MG to provide supervision etc. of WY's son while MG was at work and WY was in the hospital and or in rehabilitation.
  d. That WY was currently receiving SSA disability income for himself and his son as his income. That he also owned land in New York that provided a small mortgage payment as additional income.
  e. That he expected to require approximately 8 weeks rehabilitation after which time, once able to reopen the Antiques business, he intended to sell the property in New York and purchase property at that time. If his son liked Spencer and the Spencer school system, he would choose to be here close to his brother MG/family, if not he and his son would move back to western MA.
  f. That MG would be listed as the sole tenant on the rental agreement, as this was a temporary living arrangement for the care of WY's son while WY addressed his medical problems and that MG was the one with income to pay for the apartment and local job who needed to remain in this area.
  g. WY did not indicate any ownership, financing or otherwise association with D'Errico's Restaurant other than that his 'brother' was manager and part owner. At a date some months later, WY did indicate that he had taken over the accounting function of this restaurant for his brother.

4. Further WY states in paragraph 192 that on 11/18/04 (this date – year is incorrect but listed that way on the complaint) MG met with CH and "at the direction of WPY" gave her first and last months rent and a security deposit. WY was not present at this meeting of MG and CH and would have no knowledge of what was said, done, received or documented other than what has been submitted to this court and to the East Brookfield District court. However, it is correct that on 11/18/2003 CH and MG did enter into a rental agreement for apartment 1F, 25 Clark Street, Spencer, MA. MG confirmed to CH at this time that his name was the only name that would be listed on the

rental agreement to which I (CH) was in 100% agreement. There was no mention by either party that any of their actions was 'at the direction of WPY."

5. One of WY's claims against myself, CH, is that (paragraph 271) conspired together and filed this fraudulent instrument' with the East Brookfield Court. Further, in paragraph's 273, 278, 281, 282, 283, 284, 310 –314, 327 etc. WY claims that the East Brookfield Court was presented with a 'forgery' in the form of a 'lease' signed by MG and CH 'backdating it to 11/18/03.' I (CH) was not present in the East Brookfield Court and had no opportunity to view this document. However, in the original paragraphs 179 and 192 of WY's complaint he clearly states that the rental agreement, which WY calls a 'lease', was in MG's name, that MG was 'legally obligated to the contract of the lease,' and that it was completed between MG and CH on11/18/2004 (wrong year as listed on complaint).

6. As WY acknowledges the intent that MG was to be named on the lease, he cannot claim that a document or documents submitted to the court with MG named as the tenant are fraudulent, a 'forgery' or otherwise not in fact the true agreement entered upon by myself (CH) and MG on 11/18/2003 of which MG was given a copy with both CH and MG signatures.

7. WY further cannot claim, based on his own admission, that WY was in fact a tenant listed on the rental agreement, as WY has stated that MG's name would be on the 'lease'. (179)

8. If WY was not a tenant on said lease, his presence was as a guest and at the discretion of MG, the named and documented tenant.
9. An additional basis for WY's claim against CH is that he was wrongfully evicted from his home paragraphs 264 –268, 271-288, 342, 348, 382-391, etc. Paragraph 264 indicates that Paicopoulos (herein called MP) had a restraining order issued against WY. As a landlord CH would have no control over the individual actions of her tenants, their families or their personal issues. The action of MP against WY is solely the business of those individuals and the court. In paragraph 287, however, WY states 'Judge Abdella amended article number three of this order which allowed the plaintiffs back into their home.'

10. In this above sentence WY clearly states that the court allowed him back into his home, so therefore he cannot claim he was evicted or left homeless by the actions of CH or by anyone it seems other than himself.

11. He further states in paragraph 289, 'Judge Abdella's ruling intentionally left the plaintiffs homeless...' As the action of the court and Judge Abdella cannot in any way be construed to be the action of CH or in any way in the control of CH, WY cannot claim that CH was the cause of his being left allegedly homeless. In fact, WY called CH at home after this court action and stated something to the effect of 'Ha Ha, they can't evict me from my house but I am coming with the police to get my things and moving out anyway to get away that faggot MG and that whore of a sister (MP) of mine.' (this is an approximate quote and not verbatim)

12. WY further claims that CH (paragraph 324, 337, 338) was involved with MG and MP in the changing of locks on said apartment 1F, 25 Clark St., Spencer, MA. Again,

another claim by WY of CH's involvement, which is, unsubstantiated other than his verbal allegation.

13. The rental agreement states that locks should not be changed by tenants, and if they do so, they must inform CH and provide CH with an appropriate set up keys for emergency purposes. On a date that I do not recall, but at a time close to after the issuance of the restraining order granted to MP against WY, MG did inform CH that he had changed the apartment locks and that he would provide her with a set of keys, which he did do approximately one week later.

14. As far as WY's claim for alleged lost property within apartment 1F, 25 Clark St. and at Delude Avenue, both in Spencer, MA, this would be totally out of the control of CH as at the time WY states this occurred, CH had no access to the 1F at 25 Clark St. property without a set of keys and had no knowledge of the Delude Avenue property or its contents, and was not in control of any of the items alleged by WY to be his.

15. WY further states in 330, that on 3/07/04 WY sought to initiate a complaint against MG and MP for felony larceny in relation to the alleged missing items.

16. WY's final claims against CH relate to monetary damages and or refunds for alleged payments made to CH for WY's occupancy at 1F, 25 Clark Street, Spencer, MA. As previously established MG was the only listed tenant on the rental agreement. As previously provided in CH's answer to the complaint was a receipt to MG for first and last months rent and security deposit. All monies received by CH for the occupancy of !F, 25 Clark Street, Spencer, MA were in the form of cash paid by either MG in the form of cash for which MG was given receipts or by check on an account of Mark Gentile; or, on occasion, paid in cash by MP with an explanation that MG was at the restaurant and would not be home at an appropriate hour to stop by and had asked her to pay the monthly rent, for which MP received receipts as requested in the name of MG. At no time did WY ever provide CH with any monies or payments of any kind. WY does not state he made any payments to CH. He states in paragraph 192 that MG paid first and last months rent and security deposit. MG did pay these monies and was provided a receipt for them, a document previously provided to this court in my answer to the complaint. At no time did MG or MP indicate that said money as payment of rent was from anyone other than MG.

17. In his complaint, WY clearly states in paragraph 115 that previous to October of 2002, '… each WPY III and gentile executed durable Power of Attorney documents, which in the event of certain unusual or unforeseeable events, gave WPY III and Gentile cross durable power of attorney powers' and further states these notarized documents permitted control of monies and or property of either party by the other party. And further states that this document was executed on August 9, 2002.

18. Under the Mass General Laws section 201 the durable power attorney allows that designated person to act as attorney for the principal whether disabled or competent.

4

> Chapter 201b. Section 2. All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal shall have the same effect and inure to the benefit of, and bind the principal and his successors in interest, as if the principal were competent and not disabled.

19.    As WY indicates he entered into this agreement with MG on August 9, 2002, and clearly states that he had entered into various monetary agreements with MG (described in paragraphs 110-117) and that he had an attorney review related documentation, any alleged acts by MG in regards to monies of WY and in the control of MG would fall under the Durable Power of Attorney agreement. As this is the case stated by WY is his complaint, then any monies provided by MG to CH, which WY alleges were on his behalf but to my knowledge and understanding were on the behalf of MG as legal tenant of 1F, 25 Clark St., Spencer, MA, would fall under this section of the Massachusetts General Laws, and therefore WY cannot claim that any monies the CH received or any additional monetary damages WY claims against CH for the above actions of MG, should be returned to WY as WY relinquished this capacity to MG.

**Defendant Christine Hoyt's Motion to Dismiss under Rule 12(b)**

**In Summary:**

Plaintiff William Youngworth III complaints against Defendant Christine Hoyt fail to state a claim upon which relief can be granted as the plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a recitation of the elements of a cause of action. Within the complaint filed by the plaintiff WY, WY makes statements that contradict his own claims, and therefore should be dismissed based on the following:

1. WY claims that he was evicted from his home and left homeless due to the actions of CH, however, within his own claim he states the MG was the designated tenant on the 'lease' (rental agreement) and the 'legally obligated party to the contract of the lease.' executed by CH and MG, therefore establishing that MG was in truth the tenant of record and not WY.

2. WY claims that he was evicted from his home and left homeless due to the actions of CH, however, within his own claim he states that he was in fact not evicted by myself (CH) or the East Brookfield Court but that a restraining order was issued against WY by MP.

3, WY seeks return of monies from CH plus additional monetary damages for those sums (for which he stated no form of actual payment except as stated as being the obligation of MG) but has admitted that WY, of his own volition, entered into an agreement with MG, granting MG durable Power of Attorney, in regards to his personal property and monies. He has further indicated that MG was to pay any rent to CH under the contract of the 'lease.'   I had no knowledge, prior to this complaint, of the durable Power of Attorney between MG and WY. Any monies I received were from MG directly or represented as being from MG. If in truth, MG was acting on the behalf of WY then any monies allegedly being the property of WY could also used at the discretion of MG for which WY would have no claim(s). And WY would have no claim(s) based of any

5

actions by MG on behalf of WY, by WY's freely and willfully extending Durable Power of Attorney to MG in regards to WY's alleged property or money.


Respectfully Submitted:

*Christine Hoyt, Pro Se*

Christine Hoyt, defendant Pro Se
25 Clark Street
Spencer, MA 01562

United States District Court
District of Massachusetts

Civil Action No. 05-30108-MAP

Certificate of Service

I, Christine Hoyt, hereby certify that the documents attached in relation to Civil Action No. 05-30108-MAP, where delivered in the following manner:

By USPS mail to:

William Youngworth III, Plaintiff
PO Box 2663
Springfield, MA 01101

William P. O'Neill (attorney for defendant James Gentile)
Assistant Attorney General
Western Massachusetts Division
1350 Main Street
Springfield, MA 01103-1629

Maryanne Paicopoulos Gentile
93 East Central Street, Apt. 2
Worcester, MA 01605

Mark Gentile
11 Delude Avenue
Spencer, MA 01562

*Christine Hoyt, Pro Se*
Christine Hoyt, Pro Se
25 Clark Street
Spencer, MA 01562